24 A.3d 758

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. TIMYAN
CABBELL, A/K/A TIMYAH CABBELL, TIMYAH S. CABBELL,
TIMYAN S. CABBELL, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. JOHN
YANDAIN CALHOUN, A/K/A JOHN CALHOUN, JOHN Y. CAL-
HOUN, JR., JOHN V. CALHOUN, DEFENDANT–APPELLANT.

Argued December 1, 2010—Decided July 26, 2011.

314 

*Alison S. Perrone,* Designated Counsel, argued the cause for appellant John Yandain Calhoun (*Yvonne Smith Segars,* Public Defender, attorney; *Ms. Perrone* and *William P. Welaj,* Designated Counsel, on the briefs).

*Jay L. Wilensky,* Assistant Deputy Public Defender, argued the cause for appellant Timyan Cabbell (*Yvonne Smith Segars,* Public Defender, attorney).

*Jeanne Screen,* Deputy Attorney General, argued the cause for respondent (*Paula T. Dow,* Attorney General of New Jersey, attorney; *Ms. Screen* and *Daniel I. Bornstein,* of counsel and on the brief).

*Timyan Cabbell* submitted a letter brief pro se.

Justice ALBIN delivered the opinion of the Court.

The primary issue in this appeal is whether defendants were provided the opportunity to cross-examine two key State's witnesses, Karine Martin and Tyson Privott, consistent with the confrontation-clause requirements of our Federal and State Constitutions. We conclude that defendants were denied their constitutional right to confront Martin, but not Privott.

In a recorded statement to the police, Martin identified the two defendants as participants in the shooting death of Paul Lecaros.

Before the jury, she admitted that the prior statement was truthful but refused to respond to further questions posed by the prosecutor. At a hearing out of the presence of the jury, she testified that she was under the influence of crack cocaine both when she observed the shooting incident and when she gave the statement to the police.

The court admitted the witness's damning out-of-court statement without allowing defense counsel the opportunity to cross-examine her before the jury. Both defendants were convicted of various crimes related to the killing of Lecaros. The Appellate Division affirmed those convictions.

The opportunity to question Martin at a hearing out of the presence of the jury was not a proper substitute for defendants' right to cross-examine the witness before the jury—the factfinder responsible for determining whether defendants were guilty of the crimes charged. Both defendants were deprived of their federal and state confrontation rights, an error that was not harmless. We therefore must reverse and remand for a new trial.

## I.

### A.

Defendants Timyan Cabbell and John Calhoun were charged with various crimes related to the killing of Paul Lecaros. A Union County grand jury indicted the two defendants for first-degree murder, *N.J.S.A.* 2C:11-3(a)(1) and/or (2), third-degree unlawful possession of a handgun without a permit, *N.J.S.A.* 2C:39-5(b), and second-degree possession of a handgun for an unlawful purpose, *N.J.S.A.* 2C:39-4(a). Defendants were jointly tried before a jury. The relevant facts presented at trial follow.

### B.

After closing his bar at approximately 3:00 a.m. on April 3, 2004, Luis Lecaros proceeded to drive home several of his employees in his pickup truck. Seated next to Luis was Sandra Narvarro and to her right was Luis's son, Paul, a disc jockey at the bar; in the

backseat was another employee. At some point, as Luis traveled on Plainfield Avenue in the City of Plainfield, he was behind a black Honda with four occupants. As the Honda prepared to make a left-hand turn onto West Second Street, Luis's truck slid on the rain-slicked road and slammed into the rear of the Honda, shattering its back window and causing its rear bumper to fall off.

The State's theory was that defendant Cabbell was driving the Honda and that defendant Calhoun was a passenger in the rear of the vehicle. Immediately after the collision, Cabbell and Calhoun, armed with handguns, opened fire on the pickup truck. Cabbell, Calhoun, and a passenger then fled in the Honda, while another passenger fled on foot.

Forensic experts testified that a total of eleven shots were fired from two separate handguns. One of the bullets penetrated the truck's windshield, killing Paul almost immediately. A police investigation later determined that the Honda was owned by Cabbell's girlfriend. The police found Cabbell's school-tuition receipts inside the car. The central issue at trial was the identification of the shooters. The State's two key witnesses were Karine Martin and Tyson Privott.

### Karine Martin

After the prosecutor called Martin to the stand, she repeatedly stated in front of the jury, "I do not wish to testify." The court and prosecutor both warned Martin that her refusal to testify could subject her to contempt and a jail sentence. The reluctant witness, when pressed by the prosecutor, admitted that she was in custody for a drug-related offense, that she had given a statement to the police about the shooting, and that the statement was truthful. Because the witness continued to insist that she did not want to testify, the court decided to conduct a *Rule* 104 hearing out of the presence of the jury to determine the admissibility of Martin's out-of-court statement.[1] To this point, defendants were not given the opportunity to cross-examine Martin before the jury.

---

[1] *N.J.R.E.* 104(a) provides: "When ... the admissibility of evidence ... is subject to a condition, and the fulfillment of the condition is in issue, that issue is

Outside the jury's presence, the court expressed its belief that asking Martin further questions would be "fruitless." The court indicated that the next step was to decide whether Martin's statement to the police was reliable and, if so, to read it to the jury. Cabbell's counsel asserted the right to cross-examine Martin before the jury if her prior statement were to be read to it.

On the stand at the *Rule* 104 hearing, Martin persisted in refusing to testify until the court warned her that she would be subject to citations for contempt and consecutive eighteen-month sentences for each question she refused to answer. Most of her responses concerning what and whom she saw were simply, "I don't remember." This much was extracted through the prosecutor's questioning: she was on Plainfield Avenue when she heard shots, and she gave a truthful statement to Plainfield police officers describing the shooting.

When the prosecutor attempted to refresh Martin's recollection with the statement, she replied, "I wish not to testify," but when ordered by the court to answer, she reverted to, "I don't remember." The prosecutor then asked her again whether the six-page statement to the police was the truth. Martin responded that she was under the influence of crack cocaine "[w]hen [she] gave the statement and when [she] saw what happened." When questioned yet again whether her statement was truthful, she said, "I don't remember," and when asked whether she saw "the boy get killed," she maintained, "I don't wish to testify."

On cross-examination by Cabbell's counsel, Martin stated that she did not remember whether she was under the influence at the time of the shooting or police questioning. Calhoun's counsel told the court he had no questions of the witness "at this time." In response to the court's question, "Are you through with this witness," the prosecutor replied, "For the 104, yes."

---

to be determined by the judge.... The judge may hear and determine such matters out of the presence or hearing of the jury."

At the 104 hearing, the court also took testimony from Sergeant Lawrence Brown, to whom Martin gave her April 2004 signed statement. Brown noted that although Martin was "very nervous and in fear" when she gave her statement, she did not appear to be under the influence. The court also reviewed a DVD of an interview Martin gave to the police in February 2006. During that 2006 interview, Martin averred the truthfulness of the account given in her April 2004 statement.[2]

After Martin testified, the court observed: "[W]e had an extremely traumatized witness here who was shaking, crying, obviously in fear of something.... I can only surmise what the genesis of that fear is...." The court later concluded—without reference to evidence in the record—that the basis for Martin's fear was that "she ha[d] been threatened by at least one of the defendants."

The court determined that Martin's statement was admissible under the past-recollection-recorded exception to the hearsay rule. *See N.J.R.E.* 803(c)(5). When Cabbell's counsel objected on the ground that she had not been given an opportunity to cross-examine Martin about the statement consistent with the dictates of *Crawford v. Washington*,[3] the court retorted:

> She was out in front of the jury where she denied even making the statement and I asked you if you had any questions and you didn't have any. *You had your opportunity to cross-examine her in front of the jury,* outside the presence of the jury and you waived the opportunity.

[ (Emphasis added).]

In fact, defendants were never given the opportunity to cross-examine Martin in the presence of the jury.

---

[2] She also expressed subjective fears about potential retaliation against her and her family if she testified. She told the investigators, "They sent threatening messages on the street," but did not elaborate on what "messages" were sent, from whom the "messages" came, who received them, or how they were conveyed to her.

[3] *Crawford v. Washington,* 541 *U.S.* 36, 124 *S.Ct.* 1354, 158 *L.Ed.*2d 177 (2004).

Martin was not returned to the courtroom. Instead, her April 2004 statement was read to the jury.[4] According to the statement, Martin observed defendant Cabbell driving the Honda with three passengers, defendant Calhoun, Michael Cofield, and a person named Dante, when Cabbell's car was struck by Luis Lecaros's truck. Both defendants and Dante got out of the car. Luis—the "Spanish guy," as Martin referred to him—stepped from his vehicle and told them that "[h]e didn't want no problems." At that point, "[Cabbell] pulled out a gun [from his waistband] and said, mother f* * * *r, you hit my girlfriend's car. Then he walked to the back of the car and bent down to look at the damage." Cabbell then stood up and he started shooting into the truck, not at Luis who was standing next to his vehicle. A passenger in the truck was hit and fell over.

After Cabbell "fired about a good three shots," Calhoun "started firing," apparently wildly because it did not appear that he "even hit the car." Indeed, the "kid" who was shot "slumped over before [Calhoun] got out of the car."

The court would not permit Martin to be brought back to the courtroom for cross-examination. After the State rested, the prosecutor, although not "want[ing] to beat a dead horse," prodded the court to give defense counsel "an opportunity to cross-examine [Martin]" if they wanted to do so since she was available in the county jail. The court rejected the prosecutor's suggestion, commenting, "We already ruled on that."

### Tyson Privott

A *Gross* [5] hearing was conducted for Tyson Privott, who at first indicated in the presence of the jury that he did not want to take

---

[4] The jury learned through the cross-examination of the testifying officer that Martin was a known drug user whom the officer had arrested between ten and fifteen times in the past.

[5] The *Gross* hearing—the name given to the 104 hearing—requires the trial court to determine the admissibility of an inconsistent out-of-court statement by

the stand. At the hearing, Privott testified that he knew Cabbell, but denied knowing anything about the Lecaros shooting. At one point, Privott denied giving a statement on May 18, 2004 to the police. At another point, he stated that he did not remember giving such a statement. When shown his signed statement, he indicated that he could not read the signature due to an eye injury. Both defendants declined to cross-examine Privott at that time.

At the hearing, a Union County Prosecutor's investigator testified about the taking of a signed statement from Privott in May 2004 in which Privott described the Lecaros shooting. A Prosecutor's detective testified about the taking of another signed statement from Privott—this one in January 2006—in which Privott reasserted the truthfulness of his earlier statement. The court ruled that both statements would be admissible, after appropriate redactions, as prior inconsistent statements. *See N.J.R.E.* 803(a)(1).

Eventually, Privott testified before the jury, denied giving the May 2004 statement to the police, and, when questioned about specific answers attributed to him in the document, disavowed saying anything that implicated Cabbell. Privott maintained that he could not see out of either eye because his "cornea [was] out of place."

On cross-examination, Cabbell's counsel elicited from Privott that he had been convicted of possession with intent to distribute drugs in 1998, 1999, and 2000. When Privott was questioned by the police in 2004, he had a pending contempt charge. At the time of his testimony in 2006, Privott was awaiting sentence on three drug convictions, one of which was possession with intent to distribute drugs within 500 feet of a public park. In response to a question from Calhoun's counsel, Privott reiterated that he did not give a statement to the police concerning the shooting.

---

assessing whether the statement is reliable. *See State v. Gross*, 121 *N.J.* 1, 10, 17, 577 *A.*2d 806 (1990).

Portions of Privott's May 2004 statement to the police were then read to the jury. In that statement, Privott recalled seeing Cabbell in his girlfriend's black Honda "[t]he night before the homicide." When Cabbell exited from the car, "a handle of a big black gun [was] sticking out of his waist." Cabbell later described the shooting to Privott. Cabbell told Privott that "[h]e was driving the car and somebody hit him from behind," that he "opened fire," and that he "got back in the car and just left." Cabbell also had told him that "he got rid" of the Honda. Several days later, Privott witnessed Cabbell and Calhoun arguing, with Cabbell asking "if he told the police that he did the shooting," and Calhoun answering "that he did not tell the police nothing."

The parties stipulated that Privott gave a sworn statement in late January 2006 in which he maintained that he suffered injuries to his head and right eye earlier that month and that everything in his 2004 statement regarding the "homicide case that [Cabbell] was involved in" was true.

### Additional Trial Testimony

Luis Lecaros testified that the force of his truck striking the Honda's back bumper caused that car's rear window to break. Within seconds of the accident, the occupants in the car began firing through their rear window. According to Lecaros, no one stepped out of the Honda, and he never left his truck or exchanged words with anyone in the car.

Sandra Narvarro, who was seated to the immediate right of Luis in the truck, testified that, after the accident, none of the car's occupants exited the vehicle or said anything. However, one of the rear-seat passengers opened fire. She saw his face clearly as the car drove away. Two weeks later, Narvarro identified Calhoun from a photographic array displayed by the police, saying she was "90 percent" certain that he was the shooter. Narvarro identified Calhoun in court as the man who shot Paul Lecaros.

Charles Seals, another witness familiar with defendants, stated that he observed Cabbell and Calhoun in an argument sometime after the shooting. Seals heard Cabbell tell Calhoun to "keep his

mouth shut" and to say nothing to the police, and Calhoun replied, "[I] don't talk." As they were about to come to blows, Calhoun told Cabbell, "I don't fight, I keep a gun." Later, after Seals was questioned by the police, he received a visit from Cabbell who told him not to say anything about the shooting. Seals informed him that he did not know anything.

Michael Cofield testified that he was not a passenger in the Honda at the time of the shooting, thus contradicting Martin's account. He claimed to have observed the entire incident from the living-room window of his girlfriend's apartment. He asserted that two occupants were shooting from the car and that someone in the truck was returning fire. He did not identify Cabbell or Calhoun—both of whom he knew—as one of the shooters.[6]

Tyshara Shockley, another witness, observed the incident from her nearby apartment. She stated that two persons who were outside of the car began shooting at the truck.

### C.

The jury acquitted both defendants of murder, but convicted them of lesser-included offenses. The jury convicted Cabbell of first-degree aggravated manslaughter, *N.J.S.A.* 2C:11–4(a), Calhoun of second-degree manslaughter, *N.J.S.A.* 2C:11–4(b), and both defendants of the weapons offenses.

For the aggravated-manslaughter conviction, the court sentenced Cabbell as a persistent offender to an extended term of forty years subject to the No Early Release Act (NERA), *N.J.S.A.* 2C:43–7.2, and merged the weapons offenses. Cabbell also pled guilty to a separate indictment charging him with possession of a weapon by a person previously convicted of a drug offense, *N.J.S.A.* 2C:39–7(b), and was sentenced to a five-year concurrent term.[7]

---

[6] Cofield gave two statements to the police that differed, in various ways, from his trial testimony. But in neither statement did he identify Cabbell or Calhoun.

[7] The judgment of conviction incorrectly cites to *N.J.S.A.* 2C:39–7(a) as the applicable statute.

For the manslaughter conviction, Calhoun was sentenced as a persistent offender to a twenty-year extended term subject to NERA. The court imposed an eight-year consecutive term for possession of a handgun for an unlawful purpose and merged the handgun-possession conviction. That same day, the court sentenced Calhoun on unrelated weapons charges to which he had pled guilty.

Both Cabbell and Calhoun appealed their convictions.

## II.

In an unpublished opinion, the Appellate Division affirmed Cabbell's and Calhoun's convictions, but remanded for reconsideration of both of their extended-term sentences pursuant to *State v. Pierce*, 188 *N.J.* 155, 902 *A.*2d 1195 (2006).[8] The panel determined that the trial court did not violate Cabbell's and Calhoun's federal and state constitutional rights to confront the witnesses against them by admitting Martin's statement to the police into evidence. That statement was testimonial in nature, as defined in *Crawford v. Washington*, 541 *U.S.* 36, 68, 124 *S.Ct.* 1354, 1374, 158 *L.Ed.*2d 177, 203 (2004), and therefore its admission required that both defendants be given the opportunity to cross-examine Martin. The panel held that both defendants had that opportunity at the *Rule* 104 hearing, thus satisfying their confrontation rights. The panel also held that Privott's statement to the police was properly admitted because defendants had the opportunity to cross-examine Privott at the *Rule* 104 hearing and before the jury.[9]

We granted both defendants' petitions for certification, *State v. Cabbell*, 202 *N.J.* 43, 994 *A.*2d 1039 (2010), to decide whether

---

[8] When sentencing a person eligible for an extended term, the court must consider the full range of the sentence, from the lowest end of the ordinary range for the crime to the highest end of an extended term. *Pierce, supra,* 188 *N.J.* at 169, 902 *A.*2d 1195.

[9] Other issues raised before the Appellate Division are not germane to the appeal before this Court and therefore are not discussed here.

Martin's and Privott's statements were admitted into evidence in violation of their confrontation rights.[10]

### III.

Both defendants argue that the admission of Martin's out-of-court statement implicating them in the shooting death of Paul Lecaros violated their confrontation rights because (1) Martin was an available witness who testified on direct examination; (2) defendants were not given the opportunity to cross-examine Martin before the jury; and (3) the opportunity to cross-examine Martin at the *Rule* 104 was not an adequate constitutional substitute. Under these circumstances, defendants maintain that the right of confrontation is only meaningful if it occurs before the actual finder of fact. Because of the centrality of Martin's statement to the prosecution, defendants conclude that the erroneous admission of that statement deprived them of a fair trial. Cabbell separately asserts that the admission of Privott's May 2004 statement to the police contravened the exercise of his confrontation rights because Privott denied making the statement and claimed lack of memory.

The State counters that the Appellate Division correctly rejected defendants' assertions that the admission of both Martin's and Privott's statements to the authorities violated the Federal and State Confrontation Clauses. It asserts that the opportunity to cross-examine Martin at the *Rule* 104 hearing was constitutionally

---

[10] In his supplemental brief to this Court, defendant Calhoun argues for the first time that Martin's statement should not have been admitted under the past-recollection-recorded exception to the hearsay rule, *N.J.R.E.* 803(c)(5). Calhoun did not challenge the admission of Martin's statement on that basis before the trial court, Appellate Division, or in his petition for certification. Further, in his appellate division brief, Calhoun conceded that "those conditions existed in the present case, which might have supported the trial court's [past-recollection-recorded] ruling," and therefore attacked the admission of Martin's statement only on constitutional grounds. We will not address this new-found issue now. *See Hirsch v. N.J. State Bd. of Med. Exam'rs*, 128 *N.J.* 160, 161, 607 A.2d 986 (1992) (declining to address claim not raised in petition for certification).

sufficient and extinguished any of defendants' confrontation claims. Even if Martin's statement should not have been admitted, the State professes that it was harmless error because the jury's verdict reflects a rejection of the assertions in her statement. The State also argues that the statements of the two witnesses were "admissible under the forfeiture-by-wrongdoing rule" because there was "substantial evidence" that "both defendants engaged, directly or indirectly, in wrongdoing that was intended to, and did, procure the unavailability of Martin and Privott."

### IV.

We first address whether defendants were deprived of their constitutional right of confrontation when they were denied the opportunity to cross-examine Karine Martin in the presence of the jury. We begin by examining the governing constitutional principles.

### A.

Both the Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution provide that the accused in a criminal prosecution has the right "to be confronted with the witnesses against him." *U.S. Const.* amend. VI; *N.J. Const.* art. I, ¶ 10.[11] These constitutional provisions express a clear preference for the taking of testimony subject to cross-examination. *State ex rel. J.A.*, 195 *N.J.* 324, 342–43, 949 *A.*2d 790 (2008). The opportunity to cross-examine a witness is at the very core of the right of confrontation. *See California v. Green*, 399 *U.S.* 149, 158, 90 *S.Ct.* 1930, 1935, 26 *L.Ed.*2d 489, 497 (1970) (noting that cross-examination is the " 'greatest legal engine ever invented for the discovery of truth' " (quoting 5 *Wigmore on Evidence* § 1367 (3d ed. 1940))). "One of

---

[11] For purposes of our discussion here, references to the Sixth Amendment are interchangeable with Article I, Paragraph 10 of our State Constitution.

the essential purposes of cross-examination is to test the reliability of testimony given on direct-examination." *State v. Feaster*, 184 *N.J.* 235, 248, 877 *A.*2d 229 (2005) (citations omitted). Indeed, "[w]hen a witness's direct testimony concerns a matter at the heart of a defendant's case, the court should strike that testimony if the witness" is unavailable for cross-examination before the same factfinder. *See ibid.* (citations omitted).

The Confrontation Clause prohibits the use of a witness's out-of-court *testimonial* hearsay statement as a substitute for in-court testimony when a defendant has never been given the opportunity to cross-examine the witness. *J.A., supra,* 195 *N.J.* at 342, 949 *A.*2d 790. For confrontation-clause purposes, testimonial statements are those in which witnesses "'bear testimony'" against the accused, *Crawford, supra,* 541 *U.S.* at 51, 124 *S.Ct.* at 1364, 158 *L.Ed.*2d at 192 (citation omitted), and include certain statements that are the product of police interrogation, *see id.* at 68, 124 *S.Ct.* at 1374, 158 *L.Ed.*2d at 203. More precisely, a statement made to the police is testimonial when it is given in "circumstances objectively indicat[ing] that . . . the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington,* 547 *U.S.* 813, 822, 126 *S.Ct.* 2266, 2273–74, 165 *L.Ed.*2d 224, 237 (2006).[12]

"The [Confrontation] Clause does not bar admission of a statement so long as the [witness] is present at trial to defend or explain it." *Crawford, supra,* 541 *U.S.* at 59 n. 9, 124 *S.Ct.* at 1369 n. 9, 158 *L.Ed.*2d at 197 n. 9. However, if the witness is absent from trial, a testimonial statement is only admissible if that witness "is unavailable, and only where the defendant has had a

---

[12] In contrast, a statement is nontestimonial if "made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis, supra,* 547 *U.S.* at 822, 126 *S.Ct.* at 2273, 165 *L.Ed.*2d at 237.

prior opportunity to cross-examine." *Id.* at 59, 124 *S.Ct.* at 1369, 158 *L.Ed.*2d at 197; *accord Michigan v. Bryant,* —— *U.S.* ——, ——, 131 *S.Ct.* 1143, 1153, 179 *L.Ed.*2d 93, 104–05 (2011).

No one disputes that the statement given by Karine Martin to the police in April 2004 is "testimonial" in the constitutional sense. The only question is whether Martin was an "unavailable" witness and defendants were afforded the opportunity of cross-examination.

One of the key objectives of the Confrontation Clause is to give the "jury" the opportunity "to observe the witness's demeanor." *United States v. Owens,* 484 *U.S.* 554, 560, 108 *S.Ct.* 838, 843, 98 *L.Ed.*2d 951, 958–59 (1988) (citation omitted); *accord Barber v. Page,* 390 *U.S.* 719, 721, 88 *S.Ct.* 1318, 1320, 20 *L.Ed.*2d 255, 258 (1968) (stating that observing examination of witness by "jury" is primary object of Confrontation Clause (citation omitted)). Because it is the jury that must determine the reliability of the witness's testimony, it should be self-evident that, when the witness is available, direct- and cross-examination must be done "before the trier of fact"—the jury. *See Maryland v. Craig,* 497 *U.S.* 836, 845, 110 *S.Ct.* 3157, 3163, 111 *L.Ed.*2d 666, 678 (1990). After all, the jury is the arbiter of the credibility of the witnesses and renders the final verdict on whether the State has proven the guilt of the defendant. Because it is the jury that decides his ultimate fate, a defendant's right of confrontation would be rendered meaningless if cross-examination of a witness before a judge were deemed an adequate constitutional substitute when the witness is available. The Confrontation Clause is not satisfied when a witness who testifies on direct examination before the jury is only subject to cross-examination before the judge.

We next turn to the salient facts of this case.

## B.

Defendants were *never* given the opportunity to cross-examine Martin before the jury, even though she was present in the

courthouse and otherwise available. On direct examination, Martin repeatedly insisted that she did not wish to testify, but eventually she admitted that her statement to the police was truthful. Without giving defense counsel the opportunity to conduct cross-examination, the court convened a *Rule* 104 hearing to determine the admissibility of Martin's April 2004 statement to the police. The court evidently believed that further questioning would be "fruitless." Admittedly, Martin was a difficult witness and apparently frightened.

At the *Rule* 104 hearing, Martin provided a number of non-informational responses, such as "I don't remember," and "I do not wish to testify." But she also gave answers at this bench hearing that directly undermined her credibility. Most importantly, at one point, she stated that she was under the influence of crack cocaine not only when she witnessed the shooting incident, but also when she gave her six-page statement to the police.

At the end of the hearing, the court concluded that Martin's statement to the police was admissible under the past-recollection-recorded exception to the hearsay rule. *See N.J.R.E.* 803(c)(5). That testimonial statement was perhaps the most damning evidence against defendants—a purported eyewitness account implicating both defendants in the shooting death of Paul Lecaros. The court never told defense counsel that their only opportunity to cross-examine Martin would be at the 104 hearing. When the court made it clear that Martin would not return to the stand, Cabbell's counsel protested, stating that the defense had a right to cross-examine Martin before the jury. The court responded: "You had your opportunity to cross-examine her in front of the jury . . . and you waived the opportunity." The court was clearly mistaken. It is commendable that the prosecutor, later during the trial, attempted to remedy this error by suggesting that defense counsel be given "an opportunity to cross-examine" Martin, who was available in the county jail. The court, however, declined to revisit its ruling.

As a consequence, the jury never learned of the concession that Martin made during the 104 hearing—that, by her own words, she was under the influence of crack cocaine when she witnessed the shooting and gave her statement to the police. Defendants were never given the opportunity to cross-examine Martin about any criminal convictions and the pending charges against her, or to probe into any other area that might have affected her credibility in the eyes of the jury.

We now apply our confrontation-clause jurisprudence to these facts.

### C.

■ Contrary to the dictates of *Crawford, supra,* Martin's testimonial statement was given to the jury even though Martin was available at the time of trial and defendants were not given an opportunity to cross-examine her before the jury. *See* 541 *U.S.* at 53–54, 124 *S.Ct.* at 1365–66, 158 *L.Ed.*2d at 194; *J.A., supra,* 195 *N.J.* at 342–43, 949 *A.*2d 790. On direct examination, she told the jury that her police statement was true. At the 104 hearing, she answered questions about her state of mind at the time she witnessed the shooting and gave her police statement. Even her responses at the 104 hearing that she did not recall were relevant and not heard by the jury. Foreclosing defendants from cross-examining an available witness before the finder of fact, the jury—without more—ran afoul of *Crawford;* defendants' right of confrontation was not satisfied by giving defendants the opportunity to cross-examine Martin before the judge. *Cf. Craig, supra,* 497 *U.S.* at 845–46, 110 *S.Ct.* at 3163, 111 *L.Ed.*2d at 678 (citations omitted). Moreover, defendants did not have "a prior opportunity to cross-examine" in any real sense, *see Crawford, supra,* 541 *U.S.* at 54, 124 *S.Ct.* at 1366, 158 *L.Ed.*2d at 194, because they had every reason to expect that, after the 104 hearing, Martin would be brought back before the jury for a resumption of her examination.

■ The court expressed its opinion that further questioning of Martin would be "fruitless," but never made a finding that

Martin was unavailable as a witness. To the contrary, Martin was subjected to questioning at the 104 hearing and provided answers. A court has no authority to deny defendants their constitutional right of confrontation merely because it believes that cross-examination will be of little use. Conferring the right to cross-examine a witness is not a guarantee that the examination will be effective. *See Owens, supra,* 484 *U.S.* at 560, 108 *S.Ct.* at 843, 98 *L.Ed.*2d at 958 ("[S]uccessful cross-examination is not the constitutional guarantee."); *Delaware v. Fensterer,* 474 *U.S.* 15, 20, 106 *S.Ct.* 292, 294, 88 *L.Ed.*2d 15, 19 (1985) (noting that Confrontation Clause guarantees only opportunity to confront one's accusers, "not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish" (citation omitted)). A defendant must be given an opportunity to engage in "otherwise appropriate cross-examination." *See Delaware v. Van Arsdall,* 475 *U.S.* 673, 680, 106 *S.Ct.* 1431, 1436, 89 *L.Ed.*2d 674, 684 (1986).[13]

We reaffirm the basic tenet that a witness who testifies on direct examination before a jury must be subject to cross-examination before that jury. *Craig, supra,* 497 *U.S.* at 845–46, 110 *S.Ct.* at 3163, 111 *L.Ed.*2d at 678 (citations omitted); *Feaster, supra,* 184 *N.J.* at 248, 877 *A.*2d 229 (citations omitted). The admission of Martin's testimonial statement incriminating defendants—without giving defendants the opportunity to cross-examine the witness before the jury—violated the Sixth Amendment of the Federal Constitution and Article I, Paragraph 10 of our State Constitution.

## V.

We reject the State's arguments that this Court should find that the admission of Martin's statement—without giving

---

[13] This case is unlike *State v. Nyhammer,* 197 *N.J.* 383, 963 *A.*2d 316 (2009), which is relied on by the State. In *Nyhammer,* defense counsel had the opportunity to question a key State's witness on core issues before the jury and decided, apparently for strategic reasons, to forego cross-examination. *See id.* at 413, 963 *A.*2d 316.

defendants the opportunity to cross-examine Martin—was permissible under the not-yet-adopted forfeiture-by-wrongdoing exception to the hearsay rule, *N.J.R.E.* 804(b)(9), which became effective on July 1, 2011. We reject this argument for a number of reasons.

The newly adopted *N.J.R.E.* 804(b)(9) provides, as an exception to the hearsay rule, the admission of "[a] statement offered against a party who has engaged, directly or indirectly, in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." To state the obvious, this now-codified rule did not exist five years ago when defendants were tried, and therefore even the most prescient court can be forgiven for not applying it. Even had this new evidence rule been on the books five years ago, the trial court would have had to conduct a hearing and make a finding that the State "prov[ed] by a preponderance of the evidence that defendant engaged, directly or indirectly, in wrongdoing that was intended to, and *did, procure the witness's unavailability.*" *See State v. Byrd*, 198 *N.J.* 319, 352, 967 *A.*2d 285 (2009) (emphasis added) (citation omitted). There was no such hearing, nor did the court make specific findings of fact that a particular defendant engaged in "wrongdoing" to silence Martin. Moreover, the court never made a determination that Martin was "unavailable" as a witness, a prerequisite for application of the forfeiture-by-wrongdoing rule. *Id.* at 351–52, 967 *A.*2d 285 (citations omitted).

Perhaps even more importantly, the issue here is not about the admissibility of Martin's statement under our evidence rules. Martin's statement was admitted under the past-recollection-recorded exception to the hearsay rule, *N.J.R.E.* 803(c)(5). Accordingly, had *N.J.R.E.* 804(b)(9) been in effect, it would have been only an alternate basis for the admission of Martin's statement—provided Martin was unavailable to testify within the meaning of *N.J.R.E.* 804(a). But Martin was available; she testified—however reluctantly and evasively—before the jury and at the 104 hearing. The true issue is about the right of defen-

dants to cross-examine a witness who is available. *N.J.R.E.* 804(b)(9) does not purport to extinguish the right to cross-examine an available witness. This evidence rule, which reflects constitutional precedents, only extinguishes a defendant's confrontation rights to keep a hearsay statement from the jury when the defendant has procured the unavailability of a witness through his wrongful conduct. *See Giles v. California,* 554 *U.S.* 353, 367, 128 *S.Ct.* 2678, 2687, 171 *L.Ed.*2d 488, 500 (2008); *Reynolds v. United States,* 98 *U.S.* 145, 158, 25 *L.Ed.* 244, 247 (1879), *abrogated on other grounds, Thomas v. Review Bd. of Ind. Emp't Sec. Div.,* 450 *U.S.* 707, 713–15, 101 *S.Ct.* 1425, 1430, 67 *L.Ed.*2d 624, 631–32 (1981); *Byrd, supra,* 198 *N.J.* at 351–53, 967 *A.*2d 285.

## VI.

We find no merit in defendant Cabbell's claim that the admission of Tyson Privott's out-of-court statements to the police violated his confrontation rights. Cabbell was given the opportunity to fully cross-examine Privott before the jury about those "testimonial" hearsay statements, which were admitted as prior inconsistent statements pursuant to *N.J.R.E.* 803(a)(1). *See Davis, supra,* 547 *U.S.* at 822, 126 *S.Ct.* at 2273–74, 165 *L.Ed.*2d at 237 (citation omitted) (defining "testimonial").

## A.

More than a month after the shooting, in a May 2004 statement, Privott told the police that he saw Cabbell with a black gun in his waistband "the night before the homicide"; that later Cabbell described to him how he "opened fire" after a car he was driving was hit from behind; and that he witnessed Cabbell question Calhoun about whether Calhoun "told the police that [Cabbell] did the shooting." Before the jury, Privott denied giving the May 2004 statement to the police or giving any information that implicated Cabbell in a crime. On cross-examination, also before the jury, Cabbell's counsel elicited Privott's extensive criminal record, and, in response to questions from Calhoun's counsel,

Privott again disavowed his statement to the police. The brief cross-examination yielded as much as defense counsel could have sought as an objective.

### B.

 As noted earlier, the Sixth Amendment " 'places no constraints at all on the use of [a witness's] prior testimonial statements,' provided that 'the [witness] *appears* for cross-examination at trial.' " *State v. Nyhammer,* 197 *N.J.* 383, 412, 963 *A.*2d 316 (2009) (alterations in original) (emphasis added) (quoting *Crawford, supra,* 541 *U.S.* at 59 n. 9, 124 *S.Ct.* at 1369 n. 9, 158 *L.Ed.*2d at 197 n. 9). For purposes of the Confrontation Clause, a witness is effectively absent from trial and does not "appear" for cross-examination if he invokes his Fifth Amendment privilege in response to every question. *See Douglas v. Alabama,* 380 *U.S.* 415–20, 85 *S.Ct.* 1074–77, 13 *LEd.*2d 934, 936–38 (1965) (finding confrontation-clause violation to read witness's prior statement to jury under guise of refreshing his recollection when witness claimed Fifth Amendment privilege and refused to testify). A witness who is completely silent or unresponsive on the stand also may effectively deny a defendant his right of confrontation. *See Nyhammer, supra,* 197 *N.J.* at 414, 963 *A.*2d 316 (citation omitted).

 However, when a witness testifies at trial inconsistent with a signed or sound-recorded statement, admissible under *N.J.R.E.* 803(a)(1), the Confrontation Clause is not offended by the reading or playing of the out-of-court statement to the jury provided that the defendant has the opportunity to cross-examine the witness. *See State v. Brown,* 138 *N.J.* 481, 544–46, 651 *A.*2d 19 (1994), *overruled on other grounds, State v. Cooper,* 151 *N.J.* 326, 361–63, 377, 700 *A.*2d 306 (1997). The prior-inconsistent-statement exception to the hearsay rule allows the jury to determine whether to believe the testimony given on the stand or the diametrically different version given earlier to the police. *See ibid.* To satisfy constitutional confrontation guarantees, however,

"[t]he jury ... must observe the witness and make a decision about which account is true." *See ibid.* Likewise, the admission of a witness's prior statement describing events, when the witness feigns a loss of memory on the stand, does not violate a defendant's federal or state right of confrontation. *Ibid.* Although "a witness's feigned lack of recollection may sharply limit or nullify the value of cross-examination," we have "conclude[d] that those limitations do not rise to the level of [violating] a defendant's federal and state constitutional right to confront witnesses." *Id.* at 543, 651 *A.*2d 19 (citation omitted); *cf. Owens, supra,* 484 *U.S.* at 555–64, 108 *S.Ct.* at 840–45, 98 *L.Ed.*2d at 955–61 (finding no violation of Sixth Amendment's Confrontation Clause by allowing witness's testimony about prior out-of-court identification of his assailant, which he "clearly remembered," even though he was "unable, because of memory loss, to explain the basis for the identification").

As explained earlier, the Confrontation Clause does not assure that cross-examination will be successful. *See Owens, supra,* 484 *U.S.* at 559–60, 108 *S.Ct.* at 843, 98 *L.Ed.*2d at 957–58. "It is sufficient that the defendant has the opportunity to bring out such matters as the witness's bias, his lack of care and attentiveness, his poor eyesight, and even ... the very fact that he has a bad memory." *Id.* at 559, 108 *S.Ct.* at 842, 98 *L.Ed.*2d at 958.

The introduction of Privott's prior statements to the police did not violate the Confrontation Clause because Privott, while before the jury, answered questions on direct and cross-examination concerning the events contained in those statements. Indeed, Cabbell could not have hoped for anything more than what he achieved—Privott's renunciation of his prior statement.

## VII.

Last, we must determine whether the trial court's denying defendants the opportunity to cross-examine Martin in the presence of the jury, in violation of their federal and state confrontation rights, requires reversal of their convictions. The

violation of defendants' federal constitutional right is a fatal error, mandating a new trial, unless we are "able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 *U.S.* 18, 24, 87 *S.Ct.* 824, 828, 17 *L.Ed.2d* 705, 710–11 (1967); *accord State v. Castagna*, 187 *N.J.* 293, 312, 901 *A.2d* 363 (2006) (citation omitted). The same "harmless beyond a reasonable doubt" standard applies to the determination under our State Constitution. *See State v. Garcia*, 195 *N.J.* 192, 205, 949 *A.2d* 208 (2008) (internal quotation marks and citations omitted); *cf. R.* 2:10-2 (requiring reversal of conviction, even in absence of objection, if error "is of such a nature as to have been clearly capable of producing an unjust result").[14]

In this case, the only purported eyewitness testimony identifying Cabbell as the shooter was contained in Martin's statement to the police. Sandra Narvarro, a passenger in Lecaros's truck, saw only one shooter firing from a rear-passenger seat—Calhoun. Yet, Martin's statement described Calhoun as out of the car, shooting wildly, and seemingly hitting nothing. The testimony of witnesses varied greatly, from one shooter to two shooters, from the shooters firing from inside the vehicle to outside the vehicle. One witness, Michael Cofield, who purportedly witnessed the shooting, believed that gunfire was being returned from the truck, and although he knew both defendants, he did not identify them as the gunmen in the Honda.

We refuse to speculate, as the State would have us do, that the jury rejected Martin's statement. The State reaches that conclusion on the supposition that if the jury believed Martin's statement both defendants would have been convicted of murder. But based

---

[14] When Cabbell's counsel unsuccessfully objected to the admission of Martin's out-of-court statement without cross-examination of the witness, Calhoun's counsel was silent. We cannot know whether Calhoun's counsel expected his co-counsel's objection to speak for both. He should have independently stated his own objection if he had one. Nevertheless, the same harmless-beyond-a-reasonable-doubt standard applies even in the absence of an objection at trial. *See State v. Macon*, 57 *N.J.* 325, 340–41, 273 *A.2d* 1 (1971).

on Martin's account, the jury could have believed that Cabbell decided not to purposely shoot Lecaros, the driver of the truck who rammed his car and who was standing a few feet from him, but instead fired recklessly into the truck under circumstances manifesting extreme indifference to human life, accounting for his conviction of aggravated manslaughter. *See N.J.S.A.* 2C:11–4(a). Likewise, Martin's statement about Calhoun firing wildly, in concert with Cabbell, could account for his conviction of reckless manslaughter. *See N.J.S.A.* 2C:11–4(b).

Clearly, there was evidence implicating both defendants that is detailed earlier in this opinion, including purported admissions and attempts to silence witnesses. But the record is chock-full of inconsistencies, and at least one witness recanted. Ordinarily, it is the function of the jury to sort out the evidence, make credibility findings, and render a verdict. All in all, we cannot state with any degree of confidence that the introduction of Martin's statement was harmless beyond a reasonable doubt. *See Chapman, supra,* 386 *U.S.* at 24, 87 *S.Ct.* at 828, 17 *L.Ed.*2d at 710–11. Here, too, we can say that the error had the clear capacity to cause an unjust result. *See R.* 2:10–2. We are therefore compelled to overturn defendants' convictions and remand for a new trial.

## VIII.

In conclusion, both defendants were denied their federal and state constitutional rights to confront Karine Martin, a key State's witness, before the jury. The violation of Article I, Paragraph 10 of the New Jersey Constitution stands as an independent ground for our holding. For the reasons given, Martin's out-of-court statement to the police incriminating defendants should not have been read to the jury. The admission of that statement was not harmless error. Accordingly, we reverse the judgment of the Appellate Division, affirming defendants' convictions, and remand for a new trial consistent with this opinion.

Justice RIVERA–SOTO, concurring in part and dissenting in part.

In this appeal, the Court is asked to address the admissibility of statements made by two of the State's witnesses: Karine Martin and Tyson Privott. The majority concludes that the trial court properly admitted Privott's pretrial statement but that, by the admission of Martin's pre-trial statement, "defendants were denied their constitutional right to confront Martin," *ante* at 317, 24 *A.*3d at 761. According to the majority, that conclusion requires the reversal of the manslaughter and weapons offenses convictions and sentences of defendants Timyan Cabbell and John Calhoun.

To the extent the majority affirms the admissibility of Privott's pre-trial statement, I concur. However, I must dissent in respect of the majority's conclusion that defendant's Confrontation Clause [1] rights were violated by the admission of Martin's pre-trial statement.

In my view, the Appellate Division's analysis and results in respect of the propriety of admitting Martin's pre-trial statement are unassailable and deserving of quoting at length. The Appellate Division explained:

> We first address the contention by both defendants that their respective rights to confrontation guaranteed by the Sixth Amendment were violated by the trial judge's admission into evidence of Martin's pretrial statement to the police after she refused to testify at the trial....
>
> In Martin's statement she said she witnessed the entire incident, identified defendant Cabbell as the driver of the car and one of the shooters, and identified defendant Calhoun as the other shooter. However, when called to the witness stand, Martin refused to testify even when told by the trial judge that she faced incarceration for contempt. She then acknowledged that she had given a statement to the police and that what she said in it was true, but she still declined to testify. The trial judge noted for the record that Martin was "extremely traumatized" and was "shaking, crying, obviously in fear of something and so much in fear

---

[1] *See U.S. Const.* amend. VI ("In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]"); *N.J. Const.* art. I, ¶ 10 ("In all criminal prosecutions the accused shall have the right ... to be confronted with the witnesses against him[.]").

that she is willing to arguably face repetitive eighteen-month sentences for refusing to testify." Later the judge opined that Martin was terrified because "she had been threatened by at least one of the defendants."

The trial judge held a *Rule* 104 hearing pursuant to *State v. Gross*, 121 *N.J.* 1 [577 *A.*2d 806] (1990), to determine the reliability of Martin's earlier statement to police, as well as her statement that she was "high" at the time she gave the statement. During the hearing, Martin became more responsive to questions posed by the Prosecutor, admitting she was near the scene of the shooting and that she heard gunshots. However, she said she could not remember if she saw either of the defendants or how many shots were fired. She again admitted to having given a statement to the police and that the statement was the truth but claimed that she could not remember anything from the statement. The court then invited counsel for both defendants to cross-examine. Only Calhoun's defense counsel conducted a cross-examination, which simply clarified that Martin had given the statement to police, that what was in it was true, and that she could not remember what she had said.

When the [p]rosecutor tried to use Martin's statement to refresh her memory, she acknowledged that the statement was in fact the one she had given but still claimed not to remember anything from the statement. She said that she was high both on the night of the shooting and when she gave the statement to police. The only cross-examination on this issue was conducted by Cabbell's counsel, who verified that Martin claimed to be under the influence both at the time of the shooting and when she gave the statement.

The trial judge evaluated the reliability of Martin's prior statement in accordance with the fifteen factors set forth in *State v. Gross*.

The trial judge held that under the preponderance of the evidence standard set forth in *Gross* as to the relevant factors, Martin's prior statement to the police was reliable. He then permitted the State to use her statement to the police as substantive evidence under the recorded recollection exception to the hearsay rule. *N.J.R.E.* 803(c)(5) states:

A statement concerning a matter about which the witness is unable to testify fully and accurately because of insufficient present recollection if the statement is contained in a writing or other record which (A) was made at a time when the fact recorded actually occurred or was fresh in the memory of the witness, and (B) was made by the witness or under the witness' direction or by some other person for the purpose of recording the statement at the time it was made, and (C) the statement concerns a matter of which the witness had knowledge when it was made, unless the circumstances indicate that the statement is not trustworthy; provided that when a witness does not remember part or all of the contents of a writing, the portion the witness does not remember may be read into evidence but not introduced as an exhibit over objection.

Defendants argue that regardless of the issue of the admissibility of Martin's statement under the hearsay exception, the court erred in admitting the statement because defendants were denied their constitutional right of confrontation.

The Sixth Amendment to the United States Constitution and Article I, Paragraph X of our State Constitution both provide a criminal defendant with "the right

to ... be confronted with the witnesses against him." *U.S. Const.* amend. VI; *N.J. Const.* art. I, ¶ 10. The Sixth Amendment and the New Jersey Constitution "prohibit the use of out-of-court *testimonial* hearsay, untested by cross-examination, as a substitute for in-court testimony." *State ex rel. J.A.,* 195 *N.J.* 324, 342 [949 *A.*2d 790] (2008). *See also Crawford v. Washington,* 541 *U.S.* 36, 124 *S.Ct.* 1354, 158 *L.Ed.*2d 177 (2004).

There is no question that Martin's statement to law enforcement officers investigating a crime was testimonial in nature since the purpose of her interview by the police was "to establish or prove past events, relevant to later criminal prosecution." *Davis v. Washington,* 547 *U.S.* 813, 822, 126 *S.Ct.* 2266, 2273–74, 165 *L.Ed.*2d 224, 237 (2006). *See also State v. Coder,* 198 *N.J.* 451, 460–61 [968 *A.*2d 1175] (2009). The Sixth Amendment's Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Davis, supra,* 547 *U.S.* at 821, 126 *S.Ct.* at 2273, 165 *L.Ed.*2d at 236. *See also State v. Branch,* 182 *N.J.* 338, 350 [865 *A.*2d 673] (2005).

The trial record shows that each defendant had the opportunity to cross-examine Martin during the *Rule* 104 hearing. The fact that they limited their cross-examination does not equate to the denial of the constitutional right of confrontation.

In *State v. Nyhammer,* 197 *N.J.* 383, 388 [963 *A.*2d 316] (2009), the Supreme Court considered the admission of a child's videotaped statements implicating the defendant in sexually abusing her. In upholding the admission of the videotape under the "tender years" exception to the hearsay rule, *N.J.R.E.* 803(c)(27), the Court rejected the defendant's claim that his right of confrontation had been abridged, noting that defense counsel had the opportunity to cross-examine the child on the core allegations in the statement but decided not to do so. *Nyhammer, supra,* 197 *N.J.* at 413 [963 *A.*2d 316].

In the present case, defendants twice had the opportunity to cross-examine Martin regarding the core portions of her police statement that incriminated them. As defendants failed to pursue their questioning of Martin when they had the opportunity to do so, they cannot now claim that they were denied the right of confrontation. Therefore, Martin's out-of-court statement made to the police was properly read to the jury.
[ (footnotes omitted).]

That recitation of the factual findings and the analysis, reasoning and conclusions flowing therefrom are compelling and, in the end, dispositive. Because the majority needlessly rejects those findings and conclusions, I respectfully dissent.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN and HOENS—5.

*For concurrence in part; dissent in part*—Justice RIVERA-SOTO—1.