**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1298-20

STATE OF NEW JERSEY,

      Plaintiff-Appellant,

v.

OSCAR RAMIREZ,

      Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **June 4, 2021**
>
> **APPELLATE DIVISION**

      Submitted May 5, 2021 – Decided June 4, 2021

      Before Judges Fuentes, Whipple, and Firko.

      On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 20-01-0071.

      Esther Suarez, Hudson County Prosecutor, attorney for appellant (Erin M. Campbell, Assistant Prosecutor, on the brief).

      Joseph E. Krakora, Public Defender, attorney for respondent (Nakea J. Barksdale, Assistant Deputy Public Defender, of counsel and on the brief).

      The opinion of the court was delivered by

FUENTES, P.J.A.D.

On January 27, 2020, a Hudson County Grand Jury returned Indictment 20-01-0071 charging defendant Oscar Ramirez with one count of first degree kidnapping, N.J.S.A. 2C:13-1b(1), four counts of first degree aggravated sexual assault, N.J.S.A. 2C:14-2a(4); N.J.S.A. 2C:14-2a(3); one count of first degree armed robbery, N.J.S.A. 2C:15-1a(1); third degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4d; fourth degree unlawful possession of a weapon, N.J.S.A. 2C:39-5d; two counts of third degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3a; and one of count of third degree terroristic threats, N.J.S.A. 2C:12-3a.

On November 19, 2020, the State moved before the Criminal Part for a protective order pursuant to Rule 3:13-3(e)(1) to exclude the victim's home address from the discovery made available to defendant and his counsel. Although the criminal acts committed against the victim caused her great emotional trauma, the State emphasized that its decision to seek a protective order in this case was not based exclusively on the inherent violent nature of these offenses. The prosecutor emphasized that in this case, the victim avowed defendant expressly threatened to kill her if she tried calling for assistance.

Defense counsel argued that direct access to the victim by defense investigators fell within defendant's constitutional right to present a complete defense. However, in recognition of the victim's apprehensions, defense

counsel suggested the court's protective order limit access to the victim's home address to defense counsel and their investigators.  Defense counsel thus urged the judge to adopt the following approach:

> Surely . . . [the State's] agent, in speaking with . . . the victim, can explain . . . to her and possibly blunt any nervousness that she might have, [n]umber [one]. Number [two], . . . not to state the obvious here but my investigators are also well aware of the fact that as a tactical matter harassing a victim is not likely to play well in front of a jury.  So they understand that they need to be respectful, and that they need, if the victim says we don't want to talk to you, to respect those wishes because if my investigators were to somehow engage in unprofessional behavior and try to repeatedly speak with the victim despite her repeatedly saying leave me alone, that would come out at trial and I'm certain that that would not weigh in favor of [defendant] should this case go to trial.

After considering the parties' arguments, the judge granted in part the State's motion and adopted the approach suggested by defense counsel.  The judge provided the following explanation for his ruling in a memorandum of opinion dated December 16, 2020:

> While the partial release of the victim's address may not entirely relieve her subjective fears, as the State argues, the [c]ourt must balance this against defendant's Constitutional rights and assess the reasonableness of any intimidation she may feel. Defense counsel and his investigatory team, by my order, will not allow [d]efendant to learn of her address.  Furthermore, [d]efendant is incarcerated. Defense counsel has assured the [c]ourt that the victim will not be coerced or intimidated and that their

3

investigators are trained to identify themselves and advise those approached that they work for or with defense counsel. Finally, nothing in this decision prevents the victim from informing the defense team she does not wish to speak with them when they contact her.

In Scoles,[1] the New Jersey Supreme Court restricted access to child pornography to the defense team noting that they "presume based on the professionalism of the New Jersey criminal defense bar, that we can expect strict adherence to the terms of a court-issued protective order."

. . . .

Here, I presume the same standard of strict adherence to my protective order from defense counsel, an attorney in good-standing and his investigatory team.

By leave granted, the State argues the judge abused his discretion by denying its motion for a protective order pursuant to Rule 3:13-3(e)(1) to keep completely confidential the victim's current home address. We agree and reverse. The protective order entered by the Criminal Part leaves unacknowledged and unaddressed the central basis of this victim's plea to protect her privacy and, as a result, obtain a measure of physical security and emotional serenity. This compromise protective order also violates the public policy of this State, as codified by the Legislature in the Sexual Assault

---

[1] In State v. Scoles, our Supreme Court adopted a multi-factor procedural protocol to resolve discovery disputes involving access to images of child pornography. 214 N.J. 236, 244, 260-62 (2013).

A-1298-20

Victim's Bill of Rights, N.J.S.A. 52:4B-60.1 to 60.3, namely, the right "[t]o choose whether to participate in any investigation of the assault[.]" N.J.S.A. 52:4B-60.2(7).

The State presented compelling grounds to protect the privacy of a woman who was kidnapped and brutally sexually assaulted while her assailant held a boxcutter to her throat. The assailant threatened to kill her if she called for help. Defendant admitted to the Hudson County Prosecutor's Office (HCPO) investigators that he has killed people while in Mexico. The victim made clear to HCPO investigators assigned to the Special Victims Unit (SVU) that she does not want defendant or anyone associated with his defense to know her current address. Defense counsel conceded her right to decline to speak with anyone about these charges, including those associated with defendant, such as defense investigators.

We gather the following account of the assault and the relevant parts of the subsequent law enforcement investigation that led to defendant's arrest from the brief and appendix submitted by the State in support of this appeal. Defendant does not question the accuracy of these facts for this limited purpose, but reserves the right to challenge any aspect of the State's case during motion practice and at trial.

I.

In the early morning hours of October 26, 2019, the victim was walking southbound on Kennedy Boulevard in the Township of North Bergen after completing her shift as a waitress at a local restaurant. As she approached the Grove Church cemetery located at 46th Street and Kennedy Boulevard, a man grabbed her from behind, covered her mouth, held a boxcutter to her throat, and threatened to kill her if she resisted or yelled for help. He forced her into the cemetery and sexually assaulted her. The assailant forcibly kissed the victim's neck, touched her breasts, penetrated her vagina with his penis, and forced his penis into her mouth. He also threatened to kill her if she sought help. He spoke to her in Spanish at all times. When he heard a siren, he stopped the assault, pulled up his pants, told her to count to twenty, and fled the scene. She believed the assailant ejaculated because he wiped his penis with his clothing after the assault.

The victim fled the cemetery wearing only her underwear. She managed to flag down a car occupied by a couple and begged them for help. They drove her directly to the North Bergen Police Department, located approximately six blocks away. She described her assailant as a "light skinned Hispanic male, approximately five feet, four inches tall, wearing a dark sweatshirt, pants and

. . . a cross body backpack." He had long dark hair and "loose big eyes," and smelled of alcohol. She told the police that the assailant also took her purse.

Four hours after the assault, a registered nurse conducted a sexual assault examination of the victim to recover any forensic evidence. The evidence gathered from this examination was sent to the State Police Crime Laboratory for analysis. SVU investigators secured video footage taken by a surveillance camera located near the cemetery. The motion judge found "[n]o crime is captured on the video. SVU reported the victim is then seen leaving the cemetery at 12:13 a.m. and holding some of her clothes. The suspect is seen walking on 46th Street toward Kennedy Boulevard at 12:30 a.m."

SVU investigators also obtained video footage showing some of defendant's activities earlier on the night of the assault. This video recording shows the same man "getting a haircut at a Bergenline Avenue barber[shop] and going to a bar/club on the 4400 block."[2] SVU investigators extracted a still photograph of the man depicted in the video. The barber identified the individual in the photograph as a client named "Oscar." The judge also found "the suspect" in the surveillance video "is seen following another woman, who appears to notice the suspect behind her; she beg[an]-walking quickly and the suspect appears to lose track of her."

---

[2] This address indicates defendant was in the City of Union City, a municipality located adjacent to the Township of North Bergen.

A-1298-20

An electronic search of law enforcement databases revealed an "Oscar Ramirez" who resided at 70th Street in North Bergen and had been previously charged with two separate sexually based offenses. SVU investigators obtained a Commission of Motor Vehicles (CMV) photograph of this individual. The barber confirmed the man depicted in the CMV photograph was his client.

The State notes that after his arrest, defendant made a series of incriminating statements to SVU investigators. For example, he denied committing the sexual assault before the investigators "mention[ed] anything about [a] rape." He alleged he was aware of a rape in North Bergen, but added that "if he did something to the female," he could not remember because he had been under the influence of alcohol and drugs. Defendant also confirmed he was the man depicted in the surveillance videos near the scene, but denied being in the cemetery. He also stated he is "a bad person," and that he had killed people in Mexico.

The kit containing forensic material of the assault found defendant's DNA on a swab taken from victim's genitalia. His DNA was also found on the victim's undergarments. The judge presiding over the detention hearing found sufficient grounds to deny his application for release under the Criminal Justice Reform Act, N.J.S.A. 2A:162-15 to -26.

A-1298-20

II.

A trial court's ruling on a discovery issue "is entitled to substantial deference and will not be overturned absent an abuse of discretion." State v. Stein, 225 N.J. 582, 593 (2016). An appellate court should therefore "generally defer to a trial court's resolution of a discovery matter, provided its determination is not so wide of the mark or is not 'based on a mistaken understanding of the applicable law.'" State in Interest of A.B., 219 N.J. 542, 554 (2014) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 334, 371 (2011)). An abuse of discretion typically arises when a trial court's decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (internal citations omitted).

Here, the State seeks a protective order to keep confidential the home address of a sexual assault victim pursuant to Rule 3:13-3(e), which in relevant part provides:

> Upon motion and for good cause shown the court may at any time order that the discovery sought pursuant to this rule be denied, restricted, or deferred or make such other order as is appropriate. In determining the motion, the court may consider the following: protection of witnesses and others from physical harm, threats of harm, . . . or any other relevant considerations.
>
> [Ibid.]

9

The State makes this application on behalf of the victim, whose life was threatened by her assailant and, as a result, reasonably augmented the emotional trauma inherently associated with the violent sexual violation of her body. The State made clear to the motion judge that the victim unequivocally refuses to speak to, or answer any questions from, any individual associated with the defense team.

Defendant argues his right to a "meaningful opportunity to present a complete defense" is denied unless he is given access to adverse witnesses during the investigatory phase of the case. Here, defendant mistakenly creates an irreconcilable conflict between his right of confrontation under the U.S. Const. amend. VI, and N.J. Const. art. I, ¶ 10, and the right of a victim "[t]o choose whether to participate in any investigation of the assault . . . ." N.J.S.A. 52:4B-60.2(7). The motion judge made the same error in denying that aspect of the State's protective order.

The defense planted the seeds of this erroneous analytical approach by relying on Scoles, a case where the defendant was charged with possession of child pornography. In Scoles, the Supreme Court provided guidelines on how defense attorneys may review evidence of child pornography when their clients are charged with its possession. 214 N.J. at 262. Here, the motion judge misapplied these standards to fashion an untenable "compromise" protective

10

order that left the victim unprotected and exposed to the very trauma she desperately sought to avoid.

However, the situation we face here is readily distinguishable from the facts in <u>Scoles</u>. The primary difference lies in the nature of the evidence. In <u>Scoles</u>, the Court sought to avoid harm "to child victims . . . through unauthorized republication of "sexually explicit images. <u>Id.</u> at 255. The Court thus imposed strict restrictions on how and why the images could be viewed by defense counsel. <u>Id.</u> at 260-61. In sharp contrast to the facts in <u>Scoles</u>, the disputed evidence here is the victim herself. The harm the protective order seeks to prevent is the emotional trauma the victim will experience when she is compelled, by judicial decree, to disclose her home address to investigators associated with her alleged assailant's defense team, and the attendant authorization granted to these investigators to come to her home and question her about this incident. Such an outcome would run afoul of our State's Constitutional commitment to protect the safety and dignity of crime victims, and the specific statutory protections the Legislature guaranteed to victims of sexual crimes.

We want to make clear, however, that our decision here does not constitute a retrenchment or departure from our State's long-established commitment to meaningful pretrial discovery in criminal trials as a means "of

11

promoting the search for truth."  Id. at 251.  As the Supreme Court explained

in Scoles, our judiciary has

> adopted an open-file approach to pretrial discovery in
> criminal matters post-indictment.  As codified, the
> New Jersey Court Rules presently demand that the
> State will provide an indicted defendant with pretrial
> access to the evidence against him. See R. 3:13-3(b)
> (addressing indicted defendant's right to State's file).
> Indeed, consistent with the view that broad pretrial
> discovery beyond even that which the Court Rules
> require advances the quest for truth, it is well
> recognized that "[i]n general, a defendant in a criminal
> case is entitled to broad discovery."

> Id. at 252. (internal citations omitted).

Our commitment to the rights of crime victims is equally strong and

infused with the same principles of justice and fairness.  Our State has codified

a series of protections for crime victims to guide how "re-victimization can . . .

be avoided through the efforts of the courts."  Id. at 258.  The Victims' Rights

Amendment (VRA) to the State Constitution mandates that a crime victim "be

treated with fairness, compassion and respect by the criminal justice system."

N.J. Const., art. I, ¶ 22.  The Crime Victim Bill of Rights (CVBR) entitles

victims to be "free from intimidation, harassment or abuse by any person

including the defendant or any other person acting in support of or on behalf of

the defendant, due to the involvement of the victim or witness in the criminal

justice process."  N.J.S.A. 52:4B-36(c).

Our Supreme Court has long recognized that "criminal discovery has its limits . . . [and courts must prevent] the chilling and inhibiting effect that discovery can have on material witnesses who are subjected to intimidation, harassment, or embarrassment." State v. D.R.H., 127 N.J. 249, 256 (1992) (internal citations omitted). Thus, when the Legislature adopted the Sexual Assault Victim's Bill of Rights (SAVBR) in 2019, it codified and clarified what had long been the public policy of this State, that victims of sexual violence have the right "[t]o chose whether to participate in any investigation of the assault." N.J.S.A. 52:4B-60.2(c)(7).

We emphasize, however, that "the rights of the accused and alleged victims and witnesses are not mutually exclusive. One right does not have to be sacrificed for another. They can and must be harmonized." Interest of A.B., 219 N.J. at 558. The rights reflected in the VRA, CVBR, and SAVBR "do not diminish those rights possessed by the accused facing a criminal prosecution." ibid.

Defendant's right to access the physical evidence the State has in its possession related to this case remains inviolate. However, to permit defense investigators to access the victim's home, against her expressed instructions, would directly violate the Constitutional protections of the CVBR, the public policy established by the Supreme Court in D.R.H., 127 N.J. 256, and the

A-1298-20

protection codified by the Legislature in N.J.S.A. 52:4B-60.2(c)(7). In sharp contrast to Scoles, in which, over the State's objections, the Court established a carefully drafted protocol to permit the defense team access to highly sensitive evidence, this case involves only honoring and preserving the privacy of a sexual assault victim. Neither defense counsel nor any person associated with the defense team has the right to violate a crime victim's right to privacy.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION