**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2238-14T3

STATE OF NEW JERSEY IN
THE INTEREST OF A.R., a minor.

> **APPROVED FOR PUBLICATION**
>
> **November 9, 2016**
>
> **APPELLATE DIVISION**

Argued October 17, 2016 — Decided  November 9, 2016

Before Judges Sabatino, Haas and Currier.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FJ-09-0170-15.

Alison Perrone, Designated Counsel, argued the cause for appellant A.R. (Joseph E. Krakora, Public Defender, attorney; Ms. Perrone, on the brief).

Jennifer J. Pinales, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Esther Suarez, Hudson County Prosecutor, attorney; Ms. Pinales, on the brief).

Frank Muroski, Deputy Attorney General, argued the cause for amicus curiae State of New Jersey Attorney General (Christopher S. Porrino, Attorney General, attorney; Ian C. Kennedy, Special Deputy Attorney General/ Acting Assistant Bergen County Prosecutor, of counsel and on the brief).

Lawrence S. Lustberg argued the cause for amicus curiae John J. Gibbons Fellowship in Public Interest and Constitutional Law at Gibbons P.C. (Gibbons P.C., attorneys; Mr. Lustberg and Jake F. Goodman, on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

This appeal concerns the continued validity of what can be termed the "incompetency proviso" within the tender-years hearsay exception, N.J.R.E. 803(c)(27). The exception, which was enacted in 1989 in accordance with the Supreme Court's proposal in State v. D.R., 109 N.J. 348 (1988), reads as follows:

> A statement by a child under the age of 12 relating to sexual misconduct committed with or against that child is admissible in a criminal, juvenile, or civil proceeding if (a) the proponent of the statement makes known to the adverse party an intention to offer the statement and the particulars of the statement at such time as to provide the adverse party with a fair opportunity to prepare to meet it; (b) the court finds, in a hearing conducted pursuant to [N.J.R.E.] 104(a), that on the basis of the time, content and circumstances of the statement there is a probability that the statement is trustworthy; and (c) either (i) the child testifies at the proceeding, or (ii) the child is unavailable as a witness and there is offered admissible evidence corroborating the act of sexual abuse; provided that no child whose statement is to be offered in evidence pursuant to this rule shall be disqualified to be a witness in such proceeding by virtue of the requirements of [N.J.R.E.] 601.
>
> [N.J.R.E. 803(c)(27) (emphasis added).]

After a bench trial in the Family Part, the appellant juvenile in this case, A.R., was found to have committed inappropriate sexual contact with a minor victim, J.C. On the date in question, both appellant and J.C. rode a school bus together that was returning them from summer camp. Appellant was then age fourteen, and J.C. was age seven, although developmentally comparable to a three-year-old. After getting off the bus, J.C. allegedly told his mother's cousin that appellant touched his "pee-pee" during the bus ride. The child's mother reported this to the police. A detective with the county prosecutor's office conducted a videotaped interview of J.C. eighteen days later. During that interview, J.C. repeated the allegations of genital touching.

At a pretrial Rule 104 hearing, the trial judge ruled that J.C.'s hearsay statements to the cousin and the detective were sufficiently trustworthy to be admissible under N.J.R.E. 803(c)(27). However, when the trial commenced, the judge questioned J.C. about his ability to discern and tell the truth, and twice concluded from J.C.'s troublesome responses that he was not competent to testify under the criteria of N.J.R.E. 601. Nevertheless, because of the incompetency proviso in N.J.R.E. 803(c)(27), the judge allowed the prosecution to present testimony from J.C.

The child repeated on direct examination the sexual touching allegations. Defense counsel conducted a brief cross-examination. The judge relied on J.C.'s hearsay statements in concluding that appellant had committed the sexual touching, even though no eyewitnesses on the bus had corroborated the allegations.

On appeal, the juvenile argues, among other things, that J.C.'s hearsay statements to the detective are "testimonial" as defined by the United States Supreme Court in Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), and its progeny. Appellant contends that he was deprived of his rights assured under the Confrontation Clauses of the United States and New Jersey Constitutions of meaningful cross-examination of those testimonial statements due to J.C.'s incompetency. Appellant thus asserts that the incompetency proviso within N.J.R.E. 803(c)(27) must be invalidated as to such testimonial hearsay statements. Appellant further argues that his adjudication of delinquency must be set aside for lack of adequate proof.

The pivotal question under the Confrontation Clause, as set forth in the Court's controlling precedents since Crawford, is whether a declarant's hearsay statements are testimonial. The Court has adopted an objective "primary purpose" test for

ascertaining whether hearsay statements made to law enforcement officers are testimonial. See Davis v. Washington, 547 U.S. 813, 822, 126 S. Ct. 2266, 2273-74, 165 L. Ed. 2d 224, 237 (2006).

Here, the circumstances reflect that the objective "primary purpose" of the detective's videotaped interview was to elicit and preserve statements from an identified child victim of sexual abuse about wrongful acts for potential use as evidence in a future prosecution. The child's recorded statement, which was admitted over objection, was consequently testimonial.

The Confrontation Clause guarantees an accused, including a juvenile in our State such as A.R., the right to confront testimonial statements through cross-examination. Although cross-examination was attempted by appellant's trial counsel in this case, that exercise was inadequate to safeguard her client's rights, given the trial court's undisputed finding that this particular child was incompetent as a witness.

As a matter of evidence law, the proviso in N.J.R.E. 803(c)(27) authorizes the admission of certain hearsay statements from young sexual assault victims who are not competent witnesses. Nevertheless, the constitutional imperatives of the Confrontation Clause must override that

provisio in the circumstances presented here with respect to the detective's interview of J.C.

For similar reasons, the child's incompetent testimony at appellant's bench trial repeating his accusations must likewise be disregarded. However, J.C.'s spontaneous utterance to his relative after getting off the bus was not testimonial under the Confrontation Clause. Hence, as appellant concedes, that particular statement was admissible as evidence for the prosecution.

For the amplified reasons that follow, we therefore reverse the trial judge's admission of this incompetent child's testimonial statements. We remand the matter for the judge, in his special capacity as fact-finder, to consider whether the State's remaining evidence suffices to prove appellant's commission of the charged offense beyond a reasonable doubt.

I.

This case stems from an alleged incident in which appellant A.R., a juvenile born in April 2000, had inappropriate sexual contact on a school bus with J.C., born in June 2007. We present the factual record in some detail, insofar as it affects our legal and constitutional analyses.

6                                                    A-2238-14T3

The Alleged Incident on the Bus and J.C.'s Statement to G.K.

On July 3, 2014, A.R. and J.C. were on a school bus transporting approximately twenty children with special needs from a summer day camp. J.C. is diagnosed with autism and ADHD.[1] The parties agree that, although chronologically the age of seven, he developmentally corresponded to a three-year-old at the time of the alleged incident.

J.C. was picked up at the bus stop that afternoon by his mother's cousin, G.K. After getting off of the bus, J.C. blurted out to G.K. that A.R. had touched him on his "belly button and pee-pee." G.K. walked J.C. home and notified his mother of the accusation.

J.C.'s mother reported the incident to the local police, which referred the matter to the Hudson County Prosecutor's Office.

The Detective's Videotaped Interview with J.C.

Eighteen days later, on July 21, 2014, Detective David Abromaitis of the Prosecutor's Office interviewed J.C. The videotaped interview, which took place in a room at the

---

[1] The trial record does not disclose what, if any, special needs appellant may have. He has not argued that he lacked the mental capacity to be culpable for the charged offense.

Prosecutor's Office, lasted about fourteen minutes. No other persons were present, and no "pre-interview" of J.C. was conducted. During the interview, J.C. repeated his claim that A.R. had touched his "pee-pee" and other areas of his body while they were sitting on the bus.

Following the detective's interview of J.C., appellant was charged in a juvenile delinquency complaint with acts which, if committed by an adult, would constitute second-degree sexual assault, N.J.S.A. 2C:14-2(b). The State moved to admit J.C.'s statements to G.K. and the detective under the tender-years hearsay exception, N.J.R.E. 803(c)(27).[2] The defense filed opposition, and the assigned Family Part judge conducted a hearing pursuant to N.J.R.E. 104, as required under the tender-years exception, to determine the admissibility of the child victim's statements. In particular, the Rule 104 hearing focused upon the hearsay exception's admissibility requirement that "on the basis of the time, content and circumstances of the statement there is a probability that the statement is trustworthy[.]" N.J.R.E. 803(c)(27).

---

[2] At our request, counsel have furnished us with the parties' motion briefs from the trial court, which reveal the positions they took below.

<u>The Rule 104 Hearing</u>

Detective Abromaitis was the State's main witness at the <u>Rule</u> 104 hearing. He had been employed by the County Prosecutor's Office for over six years, during which time he had worked on hundreds of sexual assault investigations. The detective stated that he had received special training on the protocol for conducting interviews with child victims.

In tandem with the detective's testimony, the trial judge was provided with a transcript of J.C.'s recorded interview. The video was played at the hearing in court in the presence of both counsel.[3]

The video reflects that when J.C. walked into the interview room, the detective asked him, "What's up?", to which J.C. almost immediately responded, "[A.R.] touched my pee-pee." The detective then queried "Who?", to which J.C. replied, "[A.R.] touched my pee-pee . . . he touched my belly button . . . he touched my belly button [and] everybody all laughed at me."

Later in the interview, the detective asked J.C. where he was when the touching happened. Initially, J.C. stated that he did not know. The location was then clarified with the

_____

[3] We have viewed the video recording as part of the record on appeal, as well as the associated transcript, which is not disputed as to its accuracy.

following exchange, through the use of leading questions by the detective:

> Q: Okay . . . can you tell me where you were when [A.R.] touched you? Were you at home?
>
> A: Yes I was at home[.]
>
> Q: Or were you somewhere else?
>
> A: Somewhere else (inaudible).
>
> Q: So where were you? When you say somewhere else, where's somewhere else?
>
> A: I don't know.
>
> Q: Okay . . . were you on the bus?
>
> A: Yes . . . yes.
>
> Q: Yes . . . Okay and where was [A.R.]?
>
> A: He was on the bus with me[.]
>
> Q: He was with you? Okay[.]
>
> A: Yes[.]

When asked by the detective with whom he lives, J.C. responded that he lives with his mother, his friend, dragons, and "Chowder and Clarence."[4] J.C. stated that A.R. touched him on his "pee-pee," eye, hand, eyebrows, nose, mouth, and legs. Using a working doll presented by the detective, J.C.

---

[4] It is undisputed that J.C. does not live with a friend but does live with his mother and an older brother. J.C.'s references to "Chowder" and "Clarence" are apparently to cartoon characters.

demonstrated where A.R. had touched him on his "pee-pee." The detective did not ask J.C. at any point during the interview if he understood the difference between the truth and a lie.

According to the detective, J.C.'s "spontaneous utterings of the assault" were common in such child victim interviews. On cross-examination, the detective acknowledged that, although J.C. had stated that the inappropriate touching occurred while being seated, J.C. demonstrated with the working doll that the touching instead had occurred with his pants fully down.

The prosecution also elicited testimony from J.C.'s mother's cousin, G.K., who had picked J.C. up from the bus stop. According to G.K., she observed A.R., who she identified in the courtroom, holding J.C.'s hand after they got off the bus. She recalled that while walking with her across the street, J.C. said, "[A.R.] touched [my] belly button and pee-pee." G.K. then walked J.C. home and notified his mother of the incident.

The defense countered at the Rule 104 hearing with expert testimony from a forensic psychologist with experience in techniques used in interviewing child victims. The expert opined that the detective's interview of J.C. did not comport with professional standards. According to the expert, the detective should have made an assessment of J.C.'s ability to

"distinguish between the truth and a lie" and the child's understanding of the "burden to tell the truth."

The defense expert perceived a "red flag" raised by J.C.'s apparent inability to distinguish fantasy from reality, such as when J.C. stated in the interview that he lived with cartoon characters. He found this particularly significant in light of J.C.'s developmental capacity equivalent to that of a three-year-old child. The expert also criticized the detective for "selectively investigating [the child's] statements" by using leading questions, and by tending to pursue only the child's inculpatory statements that conformed to a theory of sexual assault, but not statements which undercut that theory.

The Judge's Findings of Admissibility Under N.J.R.E. 803(c)(27)

After considering these matters, the judge preliminarily ruled that the statements J.C. made to G.K. after getting off of the bus and to the detective during the interview were both admissible under N.J.R.E. 803(c)(27). Tracking the requirements of that hearsay exception, the judge found that "there is a probability that [each] statement is trustworthy on the basis of the time[,] content[,] and circumstances of the statement[s]."

The judge acknowledged that the detective did ask a few leading questions, but found those questions were not a

"decisive determining factor" in the analysis of trustworthiness. The judge also found that the detective's failure to delve into J.C.'s ability to understand the difference between telling the truth and a lie did not "automatically" render the child's statements untrustworthy.

The judge was unpersuaded by the defense expert's criticisms of the interview. Instead, the judge concluded that "the departures, if any, from what would be a strict protocol or strict standards of questioning . . . did not cause this [child's] statement to [the detective] to become untrustworthy."

With respect to J.C.'s initial statement to G.K. after getting off the bus, the judge found significant that the assertion was "completely spontaneous." Appellant had failed to show anything "that would render that statement not to be probably trustworthy in the totality of the circumstances."

As a caveat, the judge did state that his ruling to admit J.C.'s hearsay statements was expressly "conditioned upon the alleged victim being available to testify."

The Judge's Findings of J.C.'s Incompetency

Following her opening statement, the prosecutor called J.C. to the stand. The judge noted that defense counsel had filed a pretrial motion challenging J.C.'s competency. Consequently,

the judge conducted a preliminary examination of J.C. to assess his competency before the child's trial testimony proceeded.

During the preliminary examination, the judge posed a series of questions to J.C., supplemented by a few more asked by the prosecutor. The questions delved into J.C.'s ability to discern truth from lies, and whether J.C. understood the importance of telling the truth.

Many of J.C.'s responses to these questions posed in the courtroom reflected his confusion between reality and fantasy, and a lack of recognition of his obligation to tell the truth. For example, J.C. agreed that it would be the "truth" to call a "red" toy and a "red" tie "green". He also agreed that if he were told a "dinosaur" was a "chicken," that would also be the "truth". When asked whether it would be the truth or a lie to call the courthouse a McDonald's, J.C. ambiguously responded, "Yes." He stated several times that he did not know what the truth is, or know the difference between the truth and a lie. He denied knowing whether he was supposed to tell his mother the truth or a lie. He also nonsensically referred to the truth as a "dinosaur" and "chicken butt."

Given these problematic responses, the judge ruled that J.C. was not competent to testify. But in light of the proviso within N.J.R.E. 803(c)(27)(c) permitting tender-years hearsay

A-2238-14T3

statements despite a child declarant's incompetency, the judge allowed the prosecutor to proceed with J.C.'s direct examination.

The prosecutor attempted on direct to focus J.C.'s attention to the alleged incident on the school bus, but she was thwarted in that endeavor by J.C. stating several times that he had actually walked to summer school. At that point, the prosecutor requested that the judge allow her to recall J.C. to the stand on another day, because the child had not taken his medication for several hours.

Defense counsel objected to the State being given a second attempt to establish J.C.'s competency. The judge overruled the objection, exercising his discretion to oversee court proceedings under N.J.R.E. 611. Among other things, the judge noted that J.C. has "several types of diagnosed mental health disabilities," and that since the State had not requested J.C. to testify via a closed-circuit video, there were "too many people in the courtroom" when J.C. first testified.

The Resumption of the Trial and the Court's Renewed Finding of J.C.'s Incompetency

The case resumed several days later. J.C. was recalled to the stand by the prosecutor, who renewed an attempt to establish the child's competency. However, J.C. again showed difficulty

discerning truth from fiction, stating that it would be "right" to call a spider a flower, and to call a red spider black. Revealingly, J.C. also answered "no" when he was asked, "if you tell mommy something that did not happen, would you get in trouble?"

Despite J.C.'s continued shortcomings as a witness, the prosecutor pivoted to the substantive allegations of this case. She asked the child, "Did anything happen this summer on the school bus?" J.C. replied in the affirmative, elaborating that "[A.R.] touched me." J.C. added that A.R. had touched his "pee-pee" and "butt." He then identified A.R. in the courtroom as the person who had touched him.

Defense counsel conducted a brief cross-examination of J.C. During that questioning, J.C. reiterated that appellant had touched his "pee-pee" and "butt," as well as "all over." J.C. agreed that he sat with the "small kids" near the front of the bus. J.C. also agreed that there was another child on the bus who had the same first name as appellant.

At that point, in light of J.C.'s continued problems with exhibiting a grasp of the basic concepts of truth-telling, the trial judge reiterated his earlier finding that the child was not competent to testify. The judge amplified his reasoning as follows:

My decision with regard to the issue of competency is that the witness was not competent. And I'm going to state now for the record my reasons why I'm saying that, but there are three elements of the issue to determine the issue of competency.

Number one is that the Court must be satisfied that the witness, in this case the child, understands the difference between right and wrong. <u>I think that some of the answers that [J.C.] gave do indicate that he knows the difference between right and wrong[,] although there were some answers also that it was not clear that he knew that difference</u>. I think he answered the questions truthfully but there were a couple of answers that he gave -- for example, he stated that the spider -- and, by the way, as he was answering questions, he had a toy spider which was like about more or less three inches in diameter and the top of the spider was red but the part underneath the spider and the legs were grey colored. <u>There were a couple of times where he gave answers which were not clear, whether he knew the difference between the right and the wrong answer</u>.

For example, the assistant prosecutor asked if she said that the spider was black, would that be right, I think he said right to that, and that's an example of a couple of times when his answers were not consistently accurate in reflecting right versus wrong. <u>However, I do think that most of the times he did seem to answer the questions correctly</u>.

Now, the other aspect of the inquiry as to competency is that the witness must know that to tell the truth is right. That aspect, I'm not sure. I was not satisfied that the witness knows that to tell the truth is right in the moral sense of the

17 <span>A-2238-14T3</span>

word right.  _While I think that most of the_
_answers were truthful, I am not satisfied_
_that he knew that to tell the truth is right_
_and many, if not most, of the answers that_
_he gave that have to do with that did not_
_reflect an understanding that he knows that_
_to tell the truth is the right thing._

And thirdly, the witness, in this case
the child, alleged victim, must understand
that he or she will be punished if he or she
lies to the Court.  There was no answer -- I
don't -- I think there was only like one or
two questions in that regard and _the answers_
_that the witness gave did not show that he_
_knew that if he lied, that there would be a_
_consequence, a negative consequence to him._

So of the three aspects that the Court
must be satisfied of, I think that -- I
think he was for the most part truthful.
However, I'm not satisfied that his answers
indicated that he knew that to tell the
truth was right and certainly not at all
that he understood that he would be punished
or that there would be consequences if he
lied to the Court.  _So, for those reasons, I_
_do find that the witness was not competent._

[(Emphasis added).]

After the judge sustained appellant's objection to the
State calling J.C.'s mother as an impromptu witness, the
prosecution rested.  The defense then moved for dismissal based
on (1) the fact that the alleged victim lacked competency and
was therefore unavailable; and (2) a claimed insufficiency of
the evidence.  The judge rejected both arguments.  In doing so,
the judge noted that, although J.C. lacked competency as a

witness, he had been "consistent" with respect to his allegations of improper touching, both in his earlier hearsay statements and in the courtroom.

The Defense Proofs

The defense called three witnesses:  the driver and the aide who were on the bus on the day in question, and a transportation liaison employed by the board of education.  The aide testified that she was responsible for seating the "small kids in the front and the big kids . . . in the back[.]"  She explained that she sits in the middle of the bus, so she can keep an eye on both the small and big kids and keep them separated.  The aide asserted that she did not notice anyone pulling another student's pants down on the day in question.  Additionally, no one said anything to her about an incident occurring that day.

The bus driver similarly testified that he did not notice anything unusual taking place that day.  According to the driver, A.R. would be considered one of the "[b]ig kids," and that the students were seated on the bus by height.

Lastly, the transportation liaison testified that there were two children with appellant's first name on the bus, one who was enrolled in elementary school and the other in high school.  The liaison agreed that the "whole entire [bus] trip

19                                                  A-2238-14T3

[was] really very short," approximately twenty to thirty minutes.

## The Court's Adjudication of Delinquency

Following summations, the trial judge issued an oral opinion concluding that the State had met its burden of proof, and adjudicating A.R. delinquent. In particular, the judge determined that A.R. had "touched the victim on the victim's penis underneath his clothes."

As part of his fact-finding, the judge adopted J.C.'s specific assertion to the detective that, when the touching occurred, "other children laughed at [him]," even though that particular claim had not been repeated in J.C.'s courtroom testimony. The judge rejected the defense's suggestion of mistaken identity, finding that although "there may have been another minor on the bus also named [A.] . . . the juvenile in the courtroom was the one identified by both [G.K.] and by the victim."

Reflecting again on J.C.'s credibility, the judge repeated his earlier finding that the boy was "consistent" with his account, even though he was not competent to testify. On the whole, the judge determined that J.C.'s testimony about the incident on the bus was truthful, "given the consistency of

20

everything that the victim said right after the incident and [his] statement to the detective and in this courtroom."

As a disposition for appellant's offense, the judge placed him on a two-year period of probation. The two years were designated to run concurrently with another probationary term that A.R. was already serving for another juvenile offense. The judge also required that A.R. be admitted into a program where he could receive sex offender treatment.

<u>The Appeal and the Amici</u>

A.R. has raised the following issues on appeal:

<u>POINT ONE</u>

THE IMPROPER ADMISSION OF THE CHILD'S UNRELIABLE OUT-OF-COURT STATEMENT REGARDING ALLEGED SEXUAL ABUSE DENIED THE JUVENILE THE RIGHT TO CONFRONT WITNESSES AND THE RIGHT TO DUE PROCESS OF LAW AND A FAIR ADJUDICATION PROCEEDING.

<u>POINT TWO</u>

THE COURT ERRED IN BASING THE ADJUDICATION OF DELINQUENCY UPON THE VICTIM'S TESTIMONY WHERE THE COURT FOUND THE VICTIM INCOMPETENT TO TESTIFY.

<u>POINT THREE</u>

BECAUSE J.C. WAS FOUND INCOMPETENT AS A WITNESS, HE WAS NOT AVAILABLE FOR MEANINGFUL CROSS EXAMINATION, AND THUS, ADMISSION OF HIS HEARSAY STATEMENT VIOLATED THE CONFRONTATION CLAUSE. (Not Raised Below).

POINT FOUR

> THE ADJUDICATION OF DELINQUENCY MUST BE
> REVERSED BECAUSE THE EVIDENCE DID NOT
> ESTABLISH THE JUVENILE'S GUILT OF SEXUAL
> ASSAULT BEYOND A REASONABLE DOUBT.

After the parties filed their appellate briefs, we invited two amici to participate: the Attorney General and the John J. Gibbons Fellowship in Public Interest and Constitutional Law (the "Gibbons Fellowship"). We extended those invitations because of appellant's constitutional challenge to the incompetency proviso in N.J.R.E. 803(c)(27), and also in light of the most recent Confrontation Clause jurisprudence emanating from the United States Supreme Court.[5] The amici graciously accepted our invitations, providing helpful briefs and oral arguments on the important issues before us.

In its amicus brief and at oral argument, the Attorney General has agreed with the prosecutor that the incompetency proviso is constitutional under the Confrontation Clause,

_____

[5] The significance of the constitutional issue has been underscored by the observation in a leading New Jersey treatise on evidence law, stating that "[i]t is unclear, given the New Jersey Supreme Court's rejection of Subsection (c)(ii) [of N.J.R.E. 803(c)(27)] based on Crawford, whether a criminal defendant's rights under the Confrontation Clause are sufficiently protected" under the proviso within the rule deeming incompetent child witnesses to be "available" to testify. See Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, ("Biunno") comment 6 on N.J.R.E. 803(c)(27) (2016).

assuming we reach that issue, and has joined with the prosecutor in urging affirmance of this juvenile disposition. The Gibbons Fellowship, meanwhile, has argued that J.C.'s hearsay statements were improperly admitted under N.J.R.E. 803(c)(27) and that, even if the hearsay is deemed admissible under the evidence rules, appellant's confrontation rights were violated because his counsel had no meaningful opportunity to cross-examine this incompetent child in court. The Gibbons Fellowship has thus joined with appellant's counsel in urging reversal.

## II.

### A.

#### The Genesis of the Tender-Years Exception

The tender-years hearsay exception, presently codified at N.J.R.E. 803(c)(27), was crafted by our State Supreme Court in 1988 in D.R., supra, 109 N.J. at 348. The Court sought in D.R. to balance, on the one hand, the difficulties of young child victims testifying in court about acts of alleged sexual abuse, and, on the other hand, the interests of criminal defendants and juveniles in effectively confronting and rebutting such allegations as part of their right to a fair trial.

In D.R., the defendant was charged with and convicted of sexually abusing his granddaughter. Id. at 351. The State's case was primarily based on the defendant's confession, which he

23

later repudiated, and the out-of-court statement of the child victim, who was age three at the time of trial and found incompetent to testify. Id. at 353-55. The trial court determined after a hearing that the child victim had not adequately shown the ability at her age "to deal with the concept of lying and telling the truth." Ibid. This court found on appeal that the victim's out-of-court statements were not admissible under any of the recognized hearsay exceptions. See State v. D.R., 214 N.J. Super. 278, 287-88 (App. Div. 1986). However, we also perceived the need for the adoption of a new exception to the evidence rules allowing hearsay from child abuse victims to be admitted in certain circumstances, where there are "sufficient indicia of reliability to justify admission[.]" Id. at 296-98.

On review, the Supreme Court reversed our decision and remanded the case. D.R., supra, 109 N.J. at 352. While the Court agreed with the need for a special hearsay exception for child sexual abuse victims, it also found that "such a fundamental change in the hearsay rule solely by judicial decision is inconsistent with the procedure set forth in the Evidence Act [of] 1960, that involves collaboration among all three branches of government." Ibid. (citing N.J.S.A. 2A:84A-33 to -45).

Having acknowledged the other branches' collaborative role in adopting new evidence rules, the Court in D.R. went on to discuss at length the policies favoring a "tender-years" hearsay exception. The Court recognized that significant proof problems can arise in child sexual abuse prosecutions, because "testimony by the victim is often the indispensable element of the prosecution's case." Id. at 358. The Court further recognized that the courtroom setting is generally "intimidating to children and often affects adversely their ability to testify credibly." Id. at 360.

The Court noted that such evidentiary challenges "would be alleviated by a modification of the hearsay rule that addresses the admissibility of out-of-court [child] victim statements[.]" Id. at 351. As the Court recognized, hearsay statements by young sexual assault victims are often "highly credible because of [their] content and the surrounding circumstances." Id. at 359. On the other hand, the Court likewise acknowledged "the substantial constitutional interests of defendants in such proceedings." Id. at 363.

Mindful of these competing interests of the State and of defendants, the Court set forth in Appendix A to its opinion in D.R. an amendment to the Rules of Evidence creating a tender-years exception. Id. at 378. In shaping that new proposed

25

rule, the Court considered recommendations on the subject developed by the American Bar Association ("the ABA Recommendations"), id. at 358-59, a host of law review articles examining child sexual abuse prosecutions, id. at 359 n.3, and statutes and case law from other jurisdictions addressing the subject. Id. at 361-62.

Overall, the Court found "thoroughly persuasive" the reasoning underlying the ABA Recommendations, the laws of several other states, and the analysis of many commentators that supported the adoption of a hearsay exception allowing the admission, in circumstances where a probability of trustworthiness is shown, of a young child's out-of-court statement concerning acts of sexual abuse. Id. at 363. The Court found such a new hearsay exception, when combined with methods to allow child victims to testify at trials through closed-circuit video, "will enable the judicial system to deal more sensibly and effectively with the difficult problems of proof inherent in child sex abuse prosecutions." Ibid.

The Incompetency Proviso

One of the key facets of the tender-years exception drafted by the Court in D.R. is the proviso within the final portion of N.J.R.E. 803(c)(27), the focus of this appeal. That proviso recites that "no child whose statement is to be offered in

26                                                        A-2238-14T3

evidence pursuant to this rule shall be disqualified to be a witness in such proceeding by virtue of the requirements of [N.J.R.E.] 601."[6]

The Court recommended this proviso after concluding, as a matter of policy, that a competency disqualification should not apply to the proposed hearsay exception. Id. at 369. In this regard, the Court noted that, as a practical matter, "[a] finding that a child-victim is incapable of understanding the duty . . . to tell the truth, and thus incompetent, is difficult to reconcile with a ruling that admits into evidence, insulated from cross-examination, the out-of-court statements of the same child made several months prior to trial." Id. at 370 (internal citations omitted).

On the whole, the Court in D.R. was persuaded by both the ABA Recommendations and the "growing trend among states . . .

---

[6] N.J.R.E. 601 provides that:

> Every person is competent to be a witness unless (a) the judge finds that the proposed witness is incapable of expression concerning the matter so as to be understood by the judge and jury either directly or through interpretation, or (b) the proposed witness is incapable of understanding the duty of a witness to tell the truth, or (c) except as otherwise provided by these rules or by law.
>
> [(Emphasis added).]

[to] abolish[] the presumption that a child's incompetent and [instead] leave[] to the jury the determination of the weight and credibility of a child's testimony." Id. at 368. The Court cited to leading evidence law scholars such as Professors Wigmore and McCormick, whose treatises favor the admission of such statements by child witnesses "for what it is worth," allowing the weight of their statements to be evaluated by the trier of fact. Ibid.

Rather than require young victims of alleged sexual assault to meet the general threshold for competency under N.J.R.E. 601, the Court instead fashioned a tender-years exception that would admit the hearsay declarations if they are specifically found by the court to have sufficient indicia of probable trustworthiness. Id. at 370.[7] As the Court made clear, this trustworthiness limitation is needed to assure "the equally significant interests of the defendant, who seeks to exercise

_____

[7] This "indicia of trustworthiness" concept derives from the United States Supreme Court's prior opinion in Idaho v. Wright, 497 U.S. 805, 815, 110 S. Ct. 3139, 3146, 111 L. Ed. 2d 638, 652 (1990). In 2004, in Crawford, supra, the Court repudiated Idaho v. Wright and the related test of Ohio v. Roberts, 448 U.S. 56, 66-67, 100 S. Ct. 2531, 2539, 65 L. Ed. 2d 597, 607-08 (1980), under the Confrontation Clause and replaced it with the present "testimonial" standard. 541 U.S. at 51-53, 124 S. Ct. at 1364-65, 158 L. Ed. 2d at 192-94. Even so, nothing prevents the "indicia of trustworthiness" standard from continuing to be used as a test of admissibility under state evidence rules, subject to the constraints of the Confrontation Clause.

the basic rights of confrontation and cross-examination so essential to the jury's duty to assess the credibility of witnesses." Id. at 369.

The Court did temper its approach in D.R. with a caveat that, if the child of tender years is available to appear at trial, he or she "should testify . . . in order to afford the jury an opportunity to assess the child's credibility and to afford the defendant the right of confrontation and cross-examination." Id. at 371. In addition, the Court expressly indicated that it was not considering "the recognition of any other rights that may be asserted by a defendant in a sexual abuse prosecution relating to a child victim's out-of-court statements." Ibid. at n.10 (emphasis added).

Codification and Application of the Exception

Implementing the decision in D.R., the tender-years hearsay exception was adopted in 1989, and numerically codified at that time as Evidence Rule 63(33). See also Biunno & Guarini, New Jersey Rules of Evidence: 1990 Edition 658-59. The language of Rule 63(33), as enacted, mirrored the Court's proposed language. See D.R., supra, 109 N.J. at 378.

As part of the comprehensive renumbering and revision of the entire body of Evidence Rules in 1993, Rule 63(33) was replaced by N.J.R.E. 803(c)(27). The operative terms of the

29

rule remained substantially the same.[8]  See N.J.R.E. 803(c)(27);

see also Amendatory Report of the Supreme Court's Committee on

Evidence (May 17, 1993).  The only other change in the Rule

occurred in 2005 to eliminate gender-based language.  See

Biunno, supra, comment 1 on N.J.R.E. 803(c)(27).

Since the time of the adoption of the tender-years

exception, it has frequently been used in sex crime prosecutions

involving young child victims.  Sometimes the courts have found

the child's hearsay admissible under the criteria of the Rule.

See, e.g., State v. T.E., 342 N.J. Super. 14, 36 (App. Div.),

certif. denied, 170 N.J. 86 (2001); State v. Delgado, 327 N.J.

Super. 137, 147-48 (App. Div. 2000).  In other instances, our

courts have excluded the child's hearsay statement, or have

required a stronger foundation to justify its admission.  See,

e.g., State v. D.G., 157 N.J. 112, 125-27 (1999) (remanding for

further proceedings as to a child's statements to a relative,

and also excluding the child's statements made during a

subsequent "re-interview"); State v. R.M., 245 N.J. Super. 504,

_____

[8] During the late 1990s, an amendment to N.J.R.E. 803(c)(27) was
proposed, but ultimately rejected, that would have changed the
age of the child from a bright-line cutoff of age twelve to a
child of "tender age" only.  The failed amendment would have
also deemed out-of-court statements inadmissible if the child
was available to testify competently. See Report of the Supreme
Court Committee on the Rules of Evidence 19-22 (1998).

516-18 (App. Div. 1991) (remanding for further hearing on the trustworthiness of a child's statement that a trial court had excluded under the Rule).

B.

### Confrontation Clause Jurisprudence Since Crawford

The application of N.J.R.E. 803(c)(27) has been substantially affected by the momentous decision of the United States Supreme Court in Crawford, supra, and the series of post-Crawford decisions construing the Confrontation Clause.[9]

The Confrontation Clause guarantees an accused the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The recognized objective of the Confrontation Clause is "to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." State v. Castagna, 187 N.J. 293, 309 (2006) (quoting Maryland v. Craig, 497 U.S. 836, 845, 110 S. Ct. 3157, 3163, 111 L. Ed. 2d 666, 678 (1990)). This goal is ordinarily achieved by the opportunity to

---

[9] To date, the cognate language of the Confrontation Clause within the New Jersey Constitution, N.J. Const., art. I, ¶ 10, has been construed coextensively with the federal counterpart. See, e.g., State v. Roach, 219 N.J. 58, 74 (2014); State v. Cabbell, 207 N.J. 311, 328 n.11 (2011). We therefore apply the same analysis to both appellant's federal and state confrontation arguments.

31

cross-examine witnesses effectively, which is an "essential and fundamental requirement" of a fair trial. Pointer v. Texas, 380 U.S. 400, 405, 85 S. Ct. 1065, 1068, 13 L. Ed. 2d 923, 927 (1965); see also Delaware v. Fensterer, 474 U.S. 15, 20, 106 S. Ct. 292, 294, 88 L. Ed. 2d 15, 19 (1985); see also State v. Chun, 194 N.J. 54, 139 (2008).

It is well settled that juveniles charged with offenses that would be crimes if they had been committed by adults, such as appellant here, have equivalent rights to a fair trial. See, e.g., In re Winship, 397 U.S. 358, 365, 90 S. Ct. 1068, 1073, 25 L. Ed. 2d 368, 376 (1970). Those rights have been held to include the right of confrontation. See State ex rel. J.A., 195 N.J. 324, 329 (2008) (holding that the admission of testimonial hearsay statements violated a juvenile's "Sixth Amendment right to confront the witnesses against him").

In Crawford, supra, 541 U.S. at 59, 124 S. Ct. at 1369, 158 L. Ed. 2d at 197, the Supreme Court construed the historical intent of the framers of the Confrontation Clause. Sharply breaking with several of its prior precedents, the Court held that the Clause bars the admission of "[t]estimonial statements of witnesses absent from trial" admitted to prove the truth of the matter asserted, except "where the declarant is unavailable,

and only where the defendant has had a prior opportunity to cross-examine." Ibid.

Since issuing its seminal opinion in Crawford in 2004, the Court has further refined these concepts, including the meaning of the pivotal notion of a "testimonial" statement. In Davis, supra, 547 U.S. at 822, 126 S. Ct. at 2273-74, 165 L. Ed. 2d at 237, the Court delineated what has become known as the "primary purpose" test for deciding whether or not a declarant's hearsay statement is testimonial for purposes of Confrontation Clause analysis. The eight-justice majority in Davis explained that standard as follows:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.
>
> [Ibid. (emphasis added).]

Subsequently, in Michigan v. Bryant, 562 U.S. 344, 131 S. Ct. 1143, 179 L. Ed. 2d 93 (2011), a divided Court further illuminated the primary purpose test. The majority in Bryant, except for Justice Thomas in concurrence, concluded that a

mortally-wounded shooting victim's statements on the street to police officers were non-testimonial because the primary purpose of the conversation was to deal with the ongoing emergency of the recent shooting and a missing firearm. Id., 562 U.S. at 370-78, 131 S. Ct. at 1162-67, 179 L. Ed. 2d at 104-09. The dissenting Justices, meanwhile, concluded that the interview's primary purpose was to generate evidence for a future prosecution. Id., 562 U.S. at 380-96, 131 S. Ct. at 1168-77, 179 L. Ed. 2d at 120-31. The majority in Bryant did clarify that the "primary purpose" of an officer's conversation with a declarant is to be evaluated on an objective basis, rather than turning upon the personal subjective intentions of either the declarant or the police officers who interviewed him. Id., 562 U.S. at 370-71, 131 S. Ct. at 1162-63, 179 L. Ed. 2d at 114-16.

Most recently, in Ohio v. Clark, ___ U.S. ___, 135 S. Ct. 2173, 192 L. Ed. 2d 306 (2015), the Supreme Court classified as non-testimonial various hearsay statements that a three-year-old boy made to his preschool teachers after they had noticed his eyes looked bloodshot. The boy stated to the teachers that the defendant, his mother's boyfriend, had injured him.

With the exception of Justice Thomas, who concurred in the result based on his own personal interpretation of the Confrontation Clause, all other eight Justices in Ohio v. Clark

34                                        A-2238-14T3

concluded that the primary purpose of the child's conversation with his teachers was not "to gather evidence for [the defendant's] prosecution." Id., ___ U.S. at ___, 135 S. Ct. at 2181, 192 L. Ed. 2d at 316 (Alito, J., majority opinion). See also id., ___ U.S. at ___, 135 S. Ct. at 2184, 192 L. Ed. 2d at 318-19 (Scalia, J., concurring) (noting that the primary purpose of the child's conversation was "not to invoke the coercive machinery of the State against [the defendant]"). The Court's majority opinion underscored that the "first objective" of the discussion was to protect the child, that it was "informal and spontaneous," and that it took place "in the informal setting of the preschool lunchroom and classroom." Id., ___ U.S. at ___, 135 S. Ct. at 2181, 192 L. Ed. 2d at 316. Consequently, the child's hearsay statements to his teachers were constitutionally admissible at trial against the defendant, even though the child had been found incompetent to testify. Id., ___ U.S. at ___, 135 S. Ct. at 2178, 192 L. Ed. 2d at 312-13.

## C.

### Post-Crawford's Impact in New Jersey

The Supreme Court's jurisprudence in Crawford and its progeny has had a substantial impact upon criminal and juvenile prosecutions in our State. See, e.g., State v. Michaels, 219 N.J. 1, 15-32 (2014) (tracing what our Supreme Court termed the

"turmoil over confrontation rights" spawned by <u>Crawford</u> and the cases applying it).

For example, in <u>J.A.</u>, <u>supra</u>, 195 <u>N.J.</u> at 348-51, our Supreme Court reversed a juvenile's delinquency adjudication for robbery because the trial court had improperly admitted and relied upon an unavailable eyewitness's hearsay statement to the police about observing the robbery and the robber's flight. Applying the "primary purpose" test of <u>Davis</u>, the Court ruled that there was no "ongoing emergency" to justify the hearsay's admission, and that the primary purpose of the eyewitness's statements to the police was to establish or prove past events germane to a potential future prosecution. <u>Id.</u> at 350.

By contrast, in <u>State v. Buda</u>, 195 <u>N.J.</u> 278 (2008), a case factually similar to what later arose in <u>Ohio v. Clark</u>, a 4-3 majority of our Court held that a battered child's statements to his mother in the car, and later during his hospital admission to a Division of Youth and Family Services ("DYFS") worker, detailing physical abuse by the defendant, were not testimonial. Hence, the admission of that hearsay did not violate the defendant's confrontation rights.

In <u>Buda</u>, the Court majority ruled that the primary purpose of the hearsay conversations was not to gather evidence for a future prosecution. <u>Id.</u> at 304-08. With respect to the DYFS

worker's interview, the majority was persuaded that the worker was merely "gathering data in order to assure a child's future well-being." Id. at 308.[10] However, the majority in Buda cautioned that a child's statements about a defendant's wrongful acts might be testimonial if the DYFS worker functioned during such an interview "predominantly as an agent/proxy or an operative for law enforcement in the collection of evidence of past crimes for use in a later criminal prosecution." Id. at 307.

The Cross-Examination Right

Our State Supreme Court has also carefully applied a key corollary principle of Crawford, which instructs that the Confrontation Clause does not prohibit the use of a declarant's prior testimonial statements, so long as "the [declarant] appears for cross-examination at trial[.]" Crawford, supra, 541 U.S. at 59 n.9, 124 S. Ct. at 1369 n.9, 158 L. Ed. 2d at 198 n.9. The Court has construed that appearance requirement to connote a right to cross-examine the declarant.

---

[10] Justice Albin and two other justices dissented in Buda as to the child's hearsay statements to the DYFS worker, finding that the dual primary purposes of that interview included an objective "to elicit information about a possible crime." Id. at 318 (Albin, J., dissenting).

For instance, in State v. Nyhammer, 197 N.J. 383 (2009), the Court upheld the trial court's admission of a videotaped police interview of a nine-year-old child who accused the defendant, her uncle, of sexual assault. The Court readily found that, based on Crawford, "there is no question that [the child's] videotape statement — given to a law enforcement officer investigating a crime — constitute[d] testimonial hearsay for Sixth Amendment purposes." Id. at 412. However, the Court also found that the defendant in Nyhammer had not been denied his rights of confrontation because his counsel had received the opportunity to attempt to cross-examine the child when she took the stand at trial. Id. at 412-13.

Even though the child victim in Nyhammer had been unable on direct examination by the prosecutor to repeat the "core accusations" detailing the defendant's assaultive conduct, the Court found that defendant's counsel had made a tactical decision to refrain from cross-examining the child about those allegations. Id. at 413-14. The Court reasoned that "[h]aving chosen that strategic course . . . defendant cannot now claim that he was denied the opportunity for cross-examination." Id. at 414.

In contrast to the situation in Nyhammer, our Court in Cabbell, supra, 207 N.J. at 311, reversed the defendants'

convictions in a homicide case, in which the trial court had admitted hearsay statements against them made by an eyewitness when he was interviewed by the police. As in Nyhammer, the Court readily determined that a right of confrontation applied. In fact, the State did not dispute in Cabbell that one of the witness's statements during the police interview was "testimonial." Id. at 330. The sole Sixth Amendment issue in Cabbell was whether the defendants' confrontation rights had been honored because their counsel had been provided with a chance to cross-examine the eyewitness at a Rule 104 preliminary hearing before the trial judge. Ibid.

The Court majority ruled in Cabbell that defense counsel's cross-examination of the declarant at the hearing before trial was insufficient to comply with the Constitution, and that the defendants had been deprived of their rights of confrontation because the witness was never produced before the jury, despite defense counsel's request that she so appear at that later proceeding. Id. at 331. The trial judge had denied the request because the witness had been resistant to testifying. Id. at 322. The majority stressed that a trial court "has no authority to deny defendants their constitutional right of confrontation merely because it believes that cross-examination will be of little use." Id. at 333.

On the other hand, the majority in <u>Cabbell</u> further noted that a defendant has no carte blanche right to cross-examine a witness "in whatever way, and to whatever extent, the defense might wish." <u>Ibid.</u> (quoting <u>Fensterer</u>, <u>supra</u>, 474 <u>U.S.</u> at 20, 106 <u>S. Ct.</u> at 294, 88 <u>L. Ed.</u> 2d at 19). Instead, a defendant only must be given the "opportunity to engage in 'otherwise appropriate cross-examination,'" with no guarantee that the cross-examination will be effective. <u>Ibid.</u> (quoting <u>Delaware v. Van Arsdall</u>, 475 <u>U.S.</u> 673, 680, 106 <u>S. Ct.</u> 1431, 1436, 89 <u>L. Ed.</u> 2d 674, 684 (1986).

<u>Crawford Applied to the Tender-Years Rule</u>

The Court instructively applied these Confrontation Clause principles in a tender-years context in <u>State v. Coder</u>, 198 <u>N.J.</u> 451 (2009). The defendant in that case was convicted of committing sexual assault of a three-year-old child. <u>Id.</u> at 460. The assault occurred while the defendant and the victim were in the basement of her apartment building, along with the child's eleven-year-old friend. <u>Id.</u> at 456. The friend who witnessed the assault immediately ran upstairs and notified the victim's mother. <u>Id.</u> at 457. The mother then spoke with her frightened daughter, who told her that the defendant had touched her vagina and buttocks. <u>Ibid.</u> The State moved before trial to admit the daughter's hearsay statement to her mother, relying

upon <u>N.J.R.E.</u> 803(c)(27). <u>Id.</u> at 458. At an ensuing <u>Rule</u> 104 hearing, the daughter, then age four, was unable to recall or speak about the incident. <u>Ibid.</u> The daughter did not testify at the defendant's trial, but her hearsay statement was admitted over objection. <u>Id.</u> at 459.

The Supreme Court held in <u>Coder</u> that, because of her inability to render a courtroom account of the incident for the jury, the child victim was "unavailable" to testify. <u>Id.</u> at 467. Hence, in order to admit the victim's hearsay, the State was required to present under <u>N.J.R.E.</u> 803(c)(27)(c)(ii) other "admissible evidence corroborating the act of sexual abuse[.]" <u>Id.</u> at 466-68. Because the older child who had witnessed the incident provided such corroboration, the Court found the victim's hearsay admissible under the tender-years exception. <u>Id.</u> at 468.

Notably, the Court found no violation of the defendant's right of confrontation under the <u>Crawford</u> doctrine in <u>Coder</u> because the victim's statements to her mother were not testimonial. <u>Id.</u> at 469. Finding the situation comparable to the child victim's statement to his mother in <u>Buda</u>, <u>supra</u>, 195 <u>N.J.</u> at 304, the Court observed that the daughter's account to her mother about what had happened to her a few minutes earlier "lack[ed] any indicia that [it] resulted from <u>law enforcement</u>

efforts 'to establish or prove past events potentially relevant to later criminal prosecution.'" Ibid. (emphasis added) (citing Davis, supra, 547 U.S. at 822, 126 S. Ct. at 2274, 161 L. Ed. 2d at 237).

A year later, the Court again applied these post-Crawford principles to the tender-years exception in State v. P.S., 202 N.J. 232, 249 (2010). There, the trial court admitted into evidence under N.J.R.E. 803(c)(27) hearsay statements that an eleven-year-old child had made to a child interview specialist in a county prosecutor's office. The child told the interviewer that the defendant had sexually assaulted her on three occasions several years earlier. Id. at 241. Because the video equipment used to record that interview had malfunctioned, the State instead presented the contents of the child's statements through the trial testimony of the interviewer. Id. at 245. The Supreme Court in P.S. agreed that the child's statements, as recollected by the interviewer and as buttressed by her written report, supported the trial court's finding that the statements were sufficiently trustworthy to satisfy the requirements of N.J.R.E. 803(c)(27). Id. at 254.

P.S. then addressed the constitutional issues of confrontation, applying Crawford's "new rule," which the Court described as having "entirely changed the Confrontation Clause

landscape." Id. at 249. Although its discussion of the issue was not extensive, the Court declared that the admissibility of a child's tender-years hearsay statement, if it is testimonial, must now be conditioned upon three requirements: (1) the State's prior notice to defense counsel; (2) a pretrial judicial finding of trustworthiness; and, most importantly for our present purposes, (3) a defendant's "opportunity to cross-examine the child at trial[.]" Ibid. (citations omitted).

That third requirement specified in P.S. negates the State's option under N.J.R.E. 803(c)(27)(c)(ii) to avoid producing a child who has made testimonial statements for cross-examination at trial by offering "admissible evidence corroborating the act of sexual abuse." P.S. signifies that the State in such testimonial situations can no longer constitutionally rely upon subsection (ii) of N.J.R.E. 803(c)(27)(c). Instead, to comply with Crawford, the State must resort to subsection (i), which requires the child to "testif[y] at the proceeding."[11]

_____

[11] See also Biunno, supra, comment 6 on N.J.R.E. 803(c)(27) (observing that P.S. resolved the "considerable doubt" about the constitutionality of subsection (c)(ii) in the wake of Crawford, now requiring that since "a testimonial statement of an absent witness is subject to the Confrontation Clause," to admit such testimonial statement by a child victim, the child "must be available to testify at trial").

P.S. did not address, however, the specific issue of confrontation presented here, i.e. whether the tender-years hearsay statements of a child who has been found incompetent to testify as a witness nonetheless can be admitted against an accused over objection.

### III.

### A.

We now consider the heart of the matter. Specifically, we address whether appellant's constitutional rights of confrontation were violated by the trial court admitting, over objection,[12] the incriminating statements of J.C., a

---

[12] Although it was not contended in the State's responding brief submitted by the prosecutor, the Attorney General as amicus argues that we should not reach the Confrontation Clause issue because appellant allegedly waived the issue by not expressly invoking the Clause in his arguments to the trial court. We decline to adopt that waiver argument for several reasons. First, an amicus on appeal generally should not present new issues that were not raised by the parties. State v. Lazo, 209 N.J. 9, 25 (2012). Second, although appellant's trial counsel did not assert the words "Confrontation Clause" or "Crawford" in her motion briefs and arguments, there is no doubt that she objected to the admission of J.C.'s out-of-court statements, and repeatedly complained about her inability to confront and cross-examine J.C. effectively because of the child's incompetency. The clear thrust of trial counsel's continuing objection implicated a claimed denial of a right of confrontation. Cf. State v. Bass, 224 N.J. 285, 312 (2016). Third, it is unlikely that the trial record here would have been materially different had defense counsel explicitly argued that J.C.'s hearsay statements were "testimonial" under Crawford. In fact, as we discuss, infra, the prosecutor specifically asked the detective
(continued)

developmentally-disabled child whom the trial court twice found incompetent to testify.  For the reasons that follow, we agree that the trial court deprived appellant of those vital rights in certain respects.

Although courts generally prefer to steer away from constitutional questions if their resolution is not essential to a case, the confrontation issues posed by appellant here are appropriate for decision.  For one thing, appellant concedes in his brief that the hearsay statements of J.C. were admissible as a matter of state evidence law under N.J.R.E. 803(c)(27).[13]

_____

(continued)
on redirect examination what his purpose was in interviewing J.C.  Fourth, appellant's trial counsel could not have been expected to anticipate the United States Supreme Court's opinion in Ohio v. Clark, the Court's most recent clarification of Confrontation Clause doctrine.  Fifth, the present appeal provides a well-briefed suitable opportunity to resolve an important unsettled question of constitutional significance about the validity of the incompetency proviso in N.J.R.E. 803(c)(27).

[13] The Gibbons Fellowship does not join in that concession and instead argues that, as a matter of statutory interpretation, the incompetency proviso in N.J.R.E. 803(c)(27)(c) only applies to subsection (ii) of the Rule and not to subsection (i) when the child victim testifies in court.  We need not reach that argument raised by solely this amicus, for the same reasons that we need not reach the waiver argument raised for the first time by the amicus Attorney General.  See Lazo, supra, 209 N.J. at 25.  In any event, we note in passing that the Gibbons Fellowship's suggested construction of the proviso appears to clash with the overall design and objectives of the evidence rule set forth by the Court in D.R., supra.  The argument for
(continued)

Appellant instead focuses his arguments for exclusion on constitutional grounds of the denial of confrontation and due process. Moreover, the Court has made very clear that the admissibility of hearsay under state evidence rules, even if they are firmly rooted in the law and in practice, can be trumped by Confrontation Clause principles. See Crawford, supra, 541 U.S. at 68, 124 S. Ct. at 1374, 158 L. Ed. 2d at 203.

In appraising the constitutionality of the tender-years exception's incompetency proviso, we remain mindful of the general presumption of constitutionality that applies to all legislation, including our evidence rules. "A statute is presumed to be constitutional and will not be declared void unless it is clearly repugnant to the Constitution." Newark Superior Officers Ass'n v. City of Newark, 98 N.J. 212, 222 (1985); see also State v. Buckner, 437 N.J. Super. 8, 24 (App. Div. 2014), aff'd, 223 N.J. 1 (2015). For the reasons we now discuss, we conclude that appellant has met his heavy burden to prove such constitutional infirmity of the incompetency proviso,

---

(continued)
limiting the proviso to subsection (ii) also does not mesh with the punctuation used within the rule, as the proviso appears immediately after both subsections (i) and (ii) and is preceded by a semicolon rather than by a comma. Further, the unpublished opinion cited by the Gibbons Fellowship as support for its construction is not binding. R. 1:36-3.

at least when the proviso is applied to a child's hearsay statements made in a testimonial setting.

### B.

The record in this case strongly supports appellant's contention that J.C.'s statements during his recorded interview with Detective Abromaitis were, as a matter of constitutional law, testimonial in nature. The manifest, and perhaps singular, "primary purpose" of the interview session was to gather facts about a past sexual offense that could be used in a future prosecution.

When specifically asked by the prosecutor on redirect examination what was the purpose of the interview, the detective responded, "We were informed that [J.C.] had made a disclosure that . . . a boy named [A.] touched his penis on the school bus on the way home from school." Although the State now suggests that perhaps the police interview was primarily conducted to assure that A.R. would not ride the bus again with J.C. or other potential child victims, that hypothesized alternative purpose notably was not mentioned in the detective's response. Indeed, the school district presumably was able to keep A.R. away from other children on its own without being commanded to do so by law enforcement.

The detective's role as an interviewer at the prosecutor's office, some eighteen days after the incident, is fundamentally different from the DYFS worker who responded to the report of abuse at the hospital in <u>Buda</u>. The context here is instead akin to the law enforcement interviews of the children in <u>Nyhammer</u>, <u>Cabbell</u>, and <u>P.S.</u>, all of which were deemed testimonial in nature.

We are cognizant that the majority opinion of Justice Alito in <u>Ohio v. Clark</u>, <u>supra</u>, as well as the concurring opinion of Justice Scalia in that case, discuss historical sources concerning the common law practice of admitting hearsay statements by young children in criminal cases. Those historical sources cited by the Justices indicate that, prior to the 1789 adoption of the United States Constitution, courts often allowed hearsay statements of young child victims to be admitted at criminal trials, despite the fact that such children were not generally considered "competent" to testify because of their age. <u>Id.</u>, ___ <u>U.S.</u> at ___, 135 <u>S. Ct.</u> at 2182, 192 <u>L. Ed.</u> 2d at 316-17.

We appreciate this historical context, which Justice Alito characterized as support that "fortifie[d]" the Court's conclusion that the child's statements in <u>Ohio v. Clark</u> were not testimonial. <u>Id.</u>, ___ <u>U.S.</u> at ___, 135 <u>S. Ct.</u> at 2181-82, 192

<u>L. Ed.</u> 2d at 316. Notably, however, the majority in <u>Ohio v. Clark</u> stopped short of declaring that statements by young children can never be testimonial. Nor did the Court hold that the statements of such young children to law enforcement officials, in particular, cannot have the objective primary purpose of aiding a future prosecution.

In fact, the majority opinion in <u>Ohio v. Clark</u> repeatedly contrasted the child's statements to his teachers in that case with statements made to law enforcement personnel. <u>Id.</u>, ___ U.S. at ___, 135 <u>S. Ct.</u> at 2182, 192 <u>L. Ed.</u> 2d at 317. Justice Alito specifically noted that the teachers' interactions with the child were "nothing like the formalized station-house questioning in <u>Crawford</u> or the police interrogation and battery affidavit in <u>Hammon[ v. Indiana.]</u>" <u>Id.</u>, ___ U.S. at ___, 135 <u>S. Ct.</u> at 2181, 192 <u>L. Ed.</u> 2d at 316.[14] Justice Alito further elaborated on this point, contrasting the child's statements to his teachers with statements that are given by children to an investigatory police officer:

> Finally, although we decline to adopt a rule
> that statements to individuals who are not

---

[14] <u>Hammon</u> is a consolidated case with <u>Davis</u>, in which the Court held that the police interrogation of a victim of domestic violence, after responding to the victim's residence and after the emergency had subsided, was a testimonial context. <u>Id.</u>, 547 <u>U.S.</u> at 829-31, 126 <u>S. Ct.</u> at 2278, 165 <u>L. Ed.</u> 2d at 241-42.

law enforcement officers are categorically outside the Sixth Amendment, the fact that [the victim] was speaking to his teachers remains highly relevant. Courts must evaluate challenged statements in context, and part of that context is the questioner's identity. Statements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial that statements given to law enforcement officers. <u>It is common sense that the relationship between a student and his teacher is very different from that between a citizen and the police. We do not ignore that reality.</u> In light of these circumstances, the Sixth Amendment did not prohibit the State from introducing [the victim]'s statements at trial.

[<u>Id.</u>, ___ <u>U.S.</u> at ___, 135 <u>S. Ct.</u> at 2182, 192 <u>L. Ed.</u> 2d at 317 (emphasis added) (internal citations omitted).]

Similarly, Justice Scalia's concurrence in <u>Ohio v. Clark</u>, joined by Justice Ginsberg, pointed out that "[t]he statements here [by the child to his teachers] would not be testimonial under the usual test applicable to internal <u>police</u> interrogation." <u>Id.</u>, ___ <u>U.S.</u> at ___, 135 <u>S. Ct.</u> at 2183-84, 192 <u>L. Ed.</u> 2d at 318 (Scalia, J., concurring) (emphasis added).[15]

---

[15] We need not consider Justice Thomas's separate opinion, and his individualized analysis of whether the child's out-of-court declarations were provided in a context of sufficient "solemnity" to qualify as testimonial. <u>Id.</u>, ___ <u>U.S.</u> at ___, 135 <u>S. Ct.</u> at 2186, 192 <u>L. Ed.</u> 2d at 321 (Thomas, J., concurring).

The concurrence also underscored that the child was being "asked questions by his teachers at school," a place "far from the surroundings adequate to impress upon a declarant the importance of what he is testifying to." Id., ___ U.S. at ___, 135 S. Ct. at 2184, 192 L. Ed. 2d at 319 (Scalia, J., concurring) (emphasis added).

Here, in contrast with the situation in Ohio v. Clark, the interview room at the prosecutor's office where J.C. was questioned by the detective—although structured in an atmosphere intended to be friendly to a child—objectively was a setting created with the obvious goal of eliciting, recording, and preserving a statement that might be used at a future trial, if J.C. repeated his earlier incriminating accusations during the session.[16] The use of anatomical dolls, diagrams, and video recording for the detective's questioning all are indicative of such a primary purpose.

---

[16] The Supreme Court of Iowa has likewise recently noted the comments expressed within the Court's opinions in Ohio v. Clark signal a constitutional distinction between statements made by young children during police interviews, and statements made to other persons not acting in a law enforcement capacity. See In the Interest of J.C., 877 N.W.2d 447 (Iowa 2016). Notably, the Iowa Justices in J.C. unanimously agreed that hearsay statements made by a young child to a "forensic interviewer" during a recorded interview at the behest of law enforcement officials comprised "testimonial" statements that triggered a right of confrontation. Id. at 458.

Our conclusion treating J.C.'s recorded statements to Detective Abromaitis as testimonial is consistent with the instructive Confrontation Clause analysis performed by the Indiana Court of Appeals in Purvis v. State, 829 N.E.2d 572 (Ind. Ct. App. 2005). The defendant in Purvis was convicted of child molestation, based in part upon incriminating statements made by the ten-year-old victim. Id. at 575. The victim first made the allegations to his mother and her boyfriend, and then repeated the allegations to a police officer less than two hours later. Id. at 576-77.

Applying the "primary purpose" test, the Indiana appellate court in Purvis held that the child's statements to his mother and boyfriend were not testimonial because they were not elicited "for the purpose of preparing to prosecute anyone but rather to gain information about what happened, find out if [the child] was harmed, and remedy any harm that had befallen him." Id. at 579. By contrast, the child's later statements to the police officer were deemed by the Indiana court to be testimonial, even though the police interview was not an "interrogation" in the formal sense of that term. Id. at 580.

The court in Purvis found it significant that, at the time of the officer's questioning, he knew of the child's allegations against the defendant and knew that he was investigating a child

molestation. <u>Ibid.</u> The court also underscored that the officer had "repeated his questioning to [the child] multiple times for the purpose of obtaining evidence to be used to prosecute [the defendant]." <u>Ibid.</u> Given this context, <u>Purvis</u> concluded that "[t]here can be no question that the information [the child] provided to [the officer] could be used in any potential prosecution, and a primary purpose of the questioning was to obtain information that could be used in [such] a prosecution." <u>Ibid.</u> The court was therefore satisfied that, under the "specific circumstances" presented, the child's interview with the police officer was testimonial, and thus triggered the defendant's rights of confrontation. <u>Ibid.</u>

Other state courts have reached similar conclusions. <u>See, e.g.</u> <u>Bobadilla v. Carlson</u>, 570 <u>F.Supp.</u> 2d 1098, 1111 (D. Minn. 2008) (finding that "[t]o hold that a young child's statement during a police interrogation is 'nontestimonial' because of the age of the declarant would require carving out an exception to <u>Crawford</u>'s repeated and categorical assertion that statements taken in the course of police interrogations are 'testimonial'"); <u>State v. Grace</u>, 111 <u>P.</u>3d 28, 38 (Haw. Ct. App. 2005) (similarly finding a police interview of a child to be "testimonial"); <u>State v. Snowden</u>, 867 <u>A.</u>2d 314 (Md. Ct. App. 2005) (same); <u>State v. Mack</u>, 101 <u>P.</u>3d 349 (Or. 2004) (same).

53

Notably, other than pointing to the historical discussion in Ohio v. Clark, neither the prosecutor nor the Attorney General's brief have cited to us a reported case from another jurisdiction that has treated a recorded interview conducted by law enforcement officials with a child victim of alleged sexual assault as non-testimonial.

We thus hold that the statements made here by J.C. to Detective Abromaitis were testimonial. The hearsay statements could not be admitted against appellant at trial without his counsel having a constitutionally-sufficient opportunity for cross-examination. The same is true of J.C.'s testimony at the trial itself, which is obviously, and literally by definition, testimonial.

We note, however, that appellant has not challenged the admissibility of J.C.'s alleged statements to his mother's cousin G.K. Those hearsay statements to a relative, assuming they occurred as described, are fundamentally different in character, akin to the non-testimonial statements that the child victims made to their mothers in Buda and Coder.

## IV.

As the last step of our analysis, we must consider whether appellant's trial counsel was afforded a meaningful and adequate opportunity at trial to cross-examine J.C. about his testimonial

54                                          A-2238-14T3

accusations.   We   conclude   that   appellant's   counsel   was effectively   deprived   of   that   important   right,   given   the   trial court's twice-repeated findings of the child's incompetency.

As   our   Supreme   Court   recognized   in   Nyhammer   and   Cabbell, the   right   of   cross-examination   entails   more   than   the   physical presence   of   a   witness   in   a   courtroom.   If   a   hearsay   declarant has   previously   communicated   out-of-court   testimonial   statements, those   statements   are   offered   for   their   truth   by   a   prosecutor against   an   accused   at   trial,   and   the   declarant   cannot   speak   or refuses   to   speak   on   the   witness   stand,   then   the   right   of confrontation   cannot   be   fulfilled.   A   defense   attorney   must   be afforded   a   fair   opportunity   to   question   the   declarant   and attempt   to   impeach   his   or   her   demeanor,   memory,   perception,   and overall credibility.

These   fundamental   objectives   cannot   be   achieved   by   a defense   lawyer   posing   questions   to   an   incompetent   witness   such as   J.C.,   who   has   been   judicially   found   incapable   of   reliably distinguishing   between   truth   and   fiction,   and   who   does   not understand   the   paramount   need   to   tell   the   truth   about   matters   of grave   importance   in   a   prosecution.   See, e.g., State v. Bueso, 225 N.J. 193, 207 (2016) (explaining   the   competency   standards for   testimony   by   young   children).   Indeed,   the   Indiana   court   in Purvis   correctly   followed   such   logic   in   excluding   the   child's

statements to the police officer because the child was found incompetent to testify, being "unable to understand the nature and obligation of an oath." Purvis, supra, 829 N.E.2d at 581.[17]

We adopt the same conclusion here. Although appellant's trial counsel did attempt to question J.C. on cross about the underlying events, the incompetent child's testimony, such as it was, leaves us with no assurance that his answers on the witness stand had any dependable probative value. The child's responses to counsel could not be relied upon, any more than his assertions to the judge that a dinosaur could be a chicken, that a red toy was green, and that he lived with cartoon characters and dragons.

This is not a situation like Nyhammer where defense counsel tactically refrained from confronting a reluctant child witness. Here, the child was not reluctant, but instead seemingly willing to agree with a number of preposterous facts suggested to him on

---

[17] We agree with Purvis that a child can be deemed incompetent to testify in court for purposes of state evidence rules, but nevertheless be considered, for purposes of the Confrontation Clause, to have uttered hearsay statements to a law enforcement official in an objectively "testimonial" setting. We reject the Attorney General's argument that the two concepts are necessarily incompatible. As used by the Court in Crawford and its progeny, the objective concept of "testimonial" is essentially situational, whereas the notion of an individual's competency to testify in court is essentially an assessment of the personal characteristics of that individual. See N.J.R.E. 601.

the witness stand. At the very least, he was repeatedly confused. We are loathe to allow appellant's finding of the commission of a serious sexual offense, with its potential long-term consequences, based on this incompetent child's testimonial assertions.

In reaching this conclusion, we do not second-guess the trial court's perception that J.C.'s specific assertions about the alleged incident on the bus had the ring of truth. Even so, we cannot with confidence conclude that those assertions, even if they are accepted at face value to be trustworthy, were meaningfully subjected to the important customary rigors of cross-examination. In fact, it may have been unseemly and perhaps even harmful to the child for defense counsel to have undertaken a pointed cross-examination designed to emphasize the child's already-exhibited failings as a reliable communicator in the witness box. The judge's repeated findings of J.C.'s incompetency, which the State does not challenge, are amply supported. Indeed, his incompetency is clearly apparent from the record.

We therefore conclude that appellant in this case was denied a fair opportunity to confront and cross-examine J.C. regarding previous statements he made in a testimonial setting.

A-2238-14T3

Hence, A.R.'s delinquency adjudication must be reconsidered because of the court's reliance on those testimonial assertions.

V.

The foregoing analysis leaves us to address appellant's final point that the evidence was insufficient here to support a finding of delinquency beyond a reasonable doubt. In considering that argument, we are obligated to view the competent evidence on the record indulgently, giving all favorable inferences to the State. See State v. Elders, 192 N.J. 224, 243-44 (2007) (citing State v. Johnson, 42 N.J. 146, 164 (1964)).

Since we have excluded both J.C.'s courtroom testimony and his recorded police interview, the State's remaining evidence consists of: (1) J.C.'s non-testimonial spontaneous utterance to G.K. at the bus stop; (2) G.K.'s observation of appellant holding J.C.'s hand after they got off the bus; and (3) G.K.'s in-court identification of appellant as the child that she saw with J.C.

The State's case is bolstered, at least to some limited extent, by the alleged inconsistency in the testimony of the bus driver and the bus aide about exactly where the aide had been seated on the trip and whether or not she had been in a position to observe any interaction on the bus between appellant and J.C.

Conversely, the State's case is weakened by the lack of any eyewitnesses on the bus who saw the alleged touching, or who heard the alleged laughter of children after it occurred.

We are reluctant to cast aside the trial judge's first-hand assessment that what J.C. allegedly said to G.K. was credible. Indeed, as we have noted, appellant does not contest the judge's finding of trustworthiness regarding that particular statement for purposes of admissibility under the hearsay exception. Nor are we willing to discard the judge's observation that G.K. herself was "believable." To the contrary, we generally owe the trier of fact considerable deference on such credibility findings. See, e.g., State v. Locurto, 157 N.J. 463, 471 (citing Johnson, supra, 42 N.J. at 161-62).

Our ruling that J.C.'s incompetence deprived appellant of the chance to meaningfully cross-examine him in court about his testimonial accounts does not necessarily compel a finding that J.C.'s separate, non-testimonial spontaneous utterance to his mother's cousin was incredible. Indeed, the young child's excited utterances in Buda, which our Supreme Court deemed non-testimonial, were treated as competent proof, despite the child's non-appearance for cross-examination at trial. Supra, 195 N.J. at 308. The same was true of the child's non-testimonial hearsay in Coder, supra, 198 N.J. at 469.

Our Supreme Court has yet to hold that a person's incompetency to testify in a courtroom signifies that his or her admissible out-of-court assertions must be per se disregarded. Moreover, the Supreme Court in D.R. specifically rejected ABA Recommendation 4.3, which had suggested the inclusion of a corroboration requirement when a child of tender years does not testify. See D.R., supra, 109 N.J. at 365.

Because this case was tried as a non-jury juvenile matter, we have a distinct procedural advantage of an opportunity to remand this difficult decision about the weight of the remaining evidence to the trial judge in the first instance. We shall take advantage of that opportunity.

On remand, the judge shall reconsider the case — this time ignoring the child's recorded interview and in-court statements — and assess only the strength of the State's remaining proofs, bearing, of course, in mind appellant's competing arguments for acquittal. If, on further reflection, the trial judge finds that the remaining proofs are inadequate to meet the State's burden, he shall enter a judgment of acquittal. Conversely, if the judge remains persuaded that the burden was met, he shall state his reasons as fully as practicable and re-issue a final

judgment of delinquency, which appellant is free to have reviewed in a new appeal.[18]

Reversed in part as to the evidential admission of the child's testimonial statements, and remanded in part. We do not retain jurisdiction. The remand shall be completed within ninety days. In the meantime, appellant's delinquency adjudication and any outstanding portions of his sentencing disposition shall remain in force, subject to the decision on remand.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[18] In light of the possibility of appellant's acquittal by the trial court on remand, we need not address at this time his contentions that the original delinquency finding violated his due process rights, aside from his right of confrontation.

A-2238-14T3